Ruler D. EDDINGS, Plaintiff,

v.

COLLINS PINE COMPANY and Almanor Railroad Company, Defendants.

Lawrence HITCHCOCK, Plaintiff,

v.

COLLINS PINE COMPANY and Almanor Railroad Company, Defendants.

Thomas G. JAMES, Plaintiff,

v.

COLLINS PINE COMPANY and Almanor Railroad Company, Defendants.

Nos. 34493–34495.

United States District Court
N. D. California, S. D.

April 25, 1956.

Tobriner, Lazarus, Brundage & Neyhart, David B. Gold, San Francisco, Cal., for plaintiffs.

A. B. Dunne, Dunne, Dunne & Phelps, John W. Martin, San Francisco, Cal., for defendants.

OLIVER J. CARTER, District Judge.

Three cases have been consolidated for a preliminary hearing on the question of the jurisdiction of the Court. The plaintiffs were injured in a common accident, and each brought a separate action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., against the same defendants, Collins Pine Company, hereinafter called "Collins", and Almanor Railroad Company, hereinafter called "Almanor".

The defendants answered severally, and as one of their defenses alleged that the Court was without jurisdiction.[1] Upon motion of plaintiffs under the provisions of Rule 12(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the issue raised by this defense was tried separately at a preliminary hearing. Evidence was presented and the matter was briefed, argued and submitted.

The defense as set forth in the answer is that the Court does not have jurisdiction of the subject matter of the action as to both defendants, or either of them, or if it does have jurisdiction as to the defendant Almanor it does not have jurisdiction over Collins. In argument the defendants have conceded that the Court has jurisdiction of the subject matter of the action as to Almanor,[2] but not as to Collins. While defendants cannot by such concession, nor can the parties by stipulation, confer jurisdiction on the Court, it is obvious from the facts hereinafter related that plaintiffs have a remedy under the F. E. L. A. against Almanor, and that the Court has jurisdiction. It is clear that a carrier by railroad cannot evade responsibility under the Act by delegating its operating duties to an independent contractor.[3] Such a contract cannot operate to exempt the carrier from liability under the Act. Section 5 of the Act, 45 U.S.C.A. § 55 reads:

"Any contract, * * * the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void * * *." See Erie R. Co. v. Margue, 6 Cir., 1928, 23 F. 2d 664.

This leaves as the sole question before the Court the jurisdiction over the subject matter with relation to Collins.

---

1. Paragraph II of the Second Answer and Defense alleges:

"This court has no jurisdiction of the subject matter of this action and has no jurisdiction to grant any relief herein, and the exclusive jurisdiction to grant any relief to plaintiff with respect to any injury received by plaintiff as referred to in the complaint is in the Industrial Accident Commission of the State of California."

2. At page 4 of their opening memorandum defendants state:

"The defendants now concede, that plaintiffs have a remedy under the Federal Employers' Liability Act but urge this Court that this remedy should be against the common carrier defendant, Almanor, and that the defendant Collins should be dismissed from these actions."

3. Atlantic Coastline R. Co. v. Treadway, 1917, 120 Va. 735, 93 S.E. 560, 10 A.L.R. 1411, certiorari denied 245 U.S. 670, 38 S.Ct. 191, 62 L.Ed. 540; Miles v. Pennsylvania R. Co., 7 Cir., 1950, 182 F.2d 411; Erie R. Co. v. Margue, 6 Cir., 1928, 23 F.2d 664.

In other words, is Collins a carrier by railroad and therefore subject to liability under the Act?

The facts are undisputed and the Court therefore finds the facts as follows: Collins Pine Company is an Oregon corporation operating a lumber mill in Chester, California; Almanor Railroad Company is a California corporation incorporated on September 25, 1941; Collins was formerly known as Grande Ronde Pine Company; on July 6, 1944, Grande Ronde changed its name to Collins and this was a change in name only; (hereafter both Grande Ronde and Collins will be referred to as "Collins"); prior to 1941 Collins operated in Oregon; after that date it operated in both Oregon and California; on September 16, 1941, Collins purchased from the Red River Lumber Company for $80,000.00 the rails and roadbed of about thirteen miles of railroad trackage running from Chester to Clear Creek Junction, California, where there was a connection with the Western Pacific Railroad, an interstate railroad; this portion of trackage had been formerly operated as a private logging road; at the Chester end this trackage connects with a spur track of Collins; after the purchase Collins decided to have a common carrier operation over this trackage; Almanor was incorporated by officers of Collins and applications were made to the Interstate Commerce Commission by Almanor for a certificate of public convenience and necessity, and by Collins for permission to acquire all of the capital stock of Almanor in exchange for the trackage and right of way and certain rolling stock and equipment; on March 19, 1942, a certificate to operate a common carrier railroad was issued to Almanor and on April 18, 1942, Collins was authorized to acquire all of the capital stock of Almanor in exchange for the trackage and right of way and certain rolling stock and equipment; on June 2, 1942, Collins conveyed the right of way and trackage to Almanor, but did not convey any of the rolling stock or equipment because of war conditions and the necessity of continuing the use of part of the equipment in its Oregon operation; on June 22, 1943, Collins entered into a contract [4]

---

4. The material part of the contract reads as follows:

"Whereas, the party of the second part (Almanor) is the owner of a railroad line extending from Chester, California, to Clear Creek Junction, California, and is operating the same as a common carrier, but that it owns no equipment for the operation of said line; and

"Whereas, the party of the first part (Collins) is the owner of a locomotive engine and cars and employs competent help which can be used in the operation of said railroad line:

"Now, Therefore, It Is Understood And Agreed between the parties hereto as follows:

"1. That the party of the first part will furnish to the party of the second part, upon its demand, a locomotive engine, equipment and train crew for the purpose of operating its railroad between Chester and Clear Creek Junction, in Plumas County, California, the said locomotive engine and equipment to be equipped and kept in a state of repair satisfactory to the Interstate Commerce Commission and the crew to be of such a number and of such skill and experience as may be required of crews engaged in the transportation of interstate commerce.

"2. The party of the second part agrees to pay for said service at the rate of Eighty Dollars ($80.00) for each round trip between said points. Trips required to be made over a portion only of said line shall be paid upon the proportion that such trip is to the distance between the said points. Special trips over said line or over portions thereof shall be arranged for far enough in advance so that the party of the first part can provide such engine, equipment and crew without serious interference with the conduct of its own business.

"3. The party of the first part shall keep said engine and equipment in repair and shall take care of all expenses in connection with the operation of said locomotive engine and crew, and all of the cost in connection with said operation shall be borne by the party of the first part.

"4. The party of the first part shall likewise keep the said roadbed and rail-

with Almanor in which Collins agreed to supply Almanor with a locomotive engine, equipment and a train crew, to pay the maintenance and expense of the equipment and crew, and to maintain the roadbed and railroad at its own expense in exchange for $80.00 per round trip over the railroad; a copy of this contract was forwarded to the Commission, but no action was ever taken by the Commission; at the time of the accidents in question the railroad was being operated pursuant to this contract; Collins and Almanor have common officers and directors; the officers of Almanor are: Truman W. Collins, president; Alton L. Collins, vice-president, Elmer R. Goudy, treasurer, Thomas B. Stoel, secretary, and Bertha O. Warner, assistant treasurer and assistant secretary; the directors of Almanor are: Truman W. Collins, Alton L. Collins, and Elmer R. Goudy; the officers of Collins Pine Company are: Truman W. Collins, president, Alton L. Collins, vice-president, Elmer R. Goudy, vice-president, Allan A. Smith, treasurer, C. E. McCulloch, secretary, Bertha O. Warner, assistant treasurer and assistant secretary, and Beryl Z. Robinson, assistant secretary; the directors of Collins are; Truman W. Collins, Alton L. Collins, Grace Collins Goudy, Elmer R. Goudy, and C. E. McCulloch; Almanor has no payroll, the plaintiffs and all other persons operating the railroad being on the payroll of Collins; Almanor does not have separate offices, all its business being conducted from the offices of the Collins Pine Company in Chester; Almanor participates in tariffs approved by the Interstate Commerce Commission and, although most of its shipments are of lumber products coming from Collins, it does ship products of others both to and from Chester; Collins pays the regular established tariff rate on whatever it ships or receives; Almanor conducts its railroad business over its own name on bills of lading, waybills, etc.; Almanor charges Collins for demurrage which charges are paid by check from Collins to Almanor; Almanor maintains its own separate bank account; interline settlements are made by Mr. Paul Foote, general freight agent for Almanor and sales manager of Collins, and revenues thus received are deposited to the credit of Almanor in its own account; Almanor pays annual dividends, and holds regular stockholders' and directors' meetings; Collins does not hold itself out to the public as a common carrier; the locomotive involved in the accident bears the name of Almanor, not Collins; the physical operation of the railroad, that is, the direction of the section crew and the operators of the locomotive, is under the supervision of Mr. George Gerbing, production manager of Collins; with regard to the section crew, the chain of command is from Mr. Truman Collins, president of Almanor (also president of Collins) to Mr. Elmer Goudy, treasurer of Almanor (also vice-president of Collins) to Mr. Gerbing, to the plaintiff James, foreman of the maintenance crew; plaintiffs are all employees of Collins as follows: James as foreman of the maintenance crew, Eddings and Hitchcock as section hands; in addition to performing railroad work plaintiffs were required to and did work around the Collins lumber mill under the direction of Collins, and as employees of Collins; plaintiffs allege that they were injured on November 2, 1953, while engaged in railroad work.

From these facts the following conclusions are drawn:

1. That Almanor is a common carrier by railroad, authorized to engage in interstate commerce as such under a certificate of public necessity and convenience issued by the Interstate Commerce Commission;

2. That Almanor is a subsidiary of Collins wholly owned and operated by Collins;

road line at all times in a good state of repair at its own cost and expense so as to facilitate the operation of trains over the same, and in the condition required for a railroad engaged in interstate commerce."

3. That Collins, at the time of the accident which is the subject of these actions, was operating and pursuant to contract had agreed to operate, the railroad facilities of Almanor;

4. That at the time of said accident plaintiffs were employees of Collins engaged in railroad work and entitled to the benefits of the Federal Employers' Liability Act;

5. That Collins was at the time of said accident a common carrier by railroad, subject to the provisions of the Federal Employers' Liability Act;

6. That this Court has jurisdiction of the subject matter of the actions as to both defendants.

The facts of this case present an unusual situation where a common carrier by railroad by contract has completely delegated its operating functions to its parent corporation, a lumber company, whose normal business operation is not that of a common carrier. The lumber company is in fact doing the railroading for the authorized railroad company as the plaintiffs put it, "down to the last paper clip." The question posed is,—are employees of the lumber company who are doing the railroad work entitled to sue the lumber company under the provisions of the F. E. L. A. for injuries alleged to have occurred in the course of their employment as railroad workers? Defendants ask this Court to hold that the actions can be maintained against the railroad company and not the lumber company. They argue that the lumber company is not and could not be a common carrier by railroad under the Act. This argument proceeds upon the assumption that there can be only one common carrier in the railroad operation here described. According to defendants Collins is an agent of Almanor for the purpose of operating the railroad, but, while such agency would create liability on the part of Almanor for railroad injuries to employees of Collins upon the theory that the principal is responsible for the acts of his agent, such agency would not make Collins a common carrier by railroad.

Such arguments overlook the purpose and intent of the contract between Collins and Almanor, and ignore the manner in which Collins in fact carried on the common carrier business of Almanor. Under the contract Collins was to "furnish" to Almanor certain equipment and "train crew for the purpose of *operating its (Almanor's) railroad* between Chester and Clear Creek Junction in Plumas County," and to keep the equipment "in a state of repair satisfactory to the *Interstate Commerce Commission*." The train crew was to be "of such number and of such skill and experience as may be required *of crews engaged in interstate commerce*." Again, Collins was required to keep the roadbed and railroad line "*in the condition required for a railroad engaged in interstate commerce*." (Emphasis added.) The theme of the contract was that Collins would do the railroad common carrier business of Almanor. When the actual method of operation is reviewed this purpose becomes clearly apparent. Almanor did not hire a single employee. Collins employees performed every function of the common carrier operation from management to operation. The fact that some of these functions were performed in the name of Almanor does not alter the fact that they were performed by Collins. In such a situation Collins is a common carrier by railroad for the purposes of the F. E. L. A. just as surely as if it had been certificated by the Interstate Commerce Commission. That the Act contemplated such a situation is apparent from Section 7, 45 U.S.C.A. § 57, which states:

"The term 'common carrier' as used in this chapter shall include the receiver or receivers *or other persons or corporations charged with the duty of the management and operation of the business of a common carrier.*" (Emphasis added.)

By contract and in actual practice Collins was "charged with the duty of the management and operation of the business of a common carrier."

Defendants attempt to avoid the implications of Section 7 by arguing that it is not the purpose of the Section to permit actions to be brought against persons with whom the railroad contracts, but that its purpose is to prevent the rights of an injured employee from being defeated by a change in form in which the railroad is conducting business, citing Cox v. Roth, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260. There the question was whether the death of a tort-feasor barred recovery under the Jones Act, 46 U.S. C.A. § 688. Since the Jones Act gives to seamen the same rights enjoyed by railroad workers under the F. E. L. A., the Supreme Court was required to construe Section 7 of the F. E. L. A. It concluded under this Section that "suit might continue against the receiver or successor corporation of the railroad." 348 U.S. at page 209, 75 S.Ct. at page 243. To say that under this Section a railroad cannot evade responsibility to its injured employees by going into receivership, or accomplishing some other form in change of management and operation, is not to say that this is the only purpose of the Section. The test is "the duty of the management and operation of the business of a common carrier." There is a clear intent to bring within the purview of the Act all who assume these duties. Both by contract and in practice Collins assumed and performed the duties of management and operation of a common carrier for Almanor. In this respect the case is similar to Copper River & N. W. Ry. Co. v. Heney, 9 Cir., 1914, 211 F. 459, where the court held that under Section 7 a non-railroad subsidiary of a railroad company, which subsidiary in part was operating the railroad, was a common carrier. The court said at page 461:

"While neither the complaint nor the answers alleged that either of the corporations was a common carrier, the complaint alleged that the Copper River Company was operating a line of railroad, and that the Katalla Company was a subsidiary company of the Copper River Company, and that the latter in operating its road did so partly through the Katalla Company as its agent. The testimony established these allegations. It was proven that the Copper River Company was at the time of the accident a common carrier. It was also shown that the Katalla Company transacted the business of the road, issued in its own name bills of lading for goods carried thereon and tickets for passengers bearing the heading, 'Katalla Company Constructing and Operating the Northwestern Railway Company.' The resident engineer of the road, who had charge of the work in the tunnel, and who was called as a witness by the plaintiff, testified that he was unable to state which of the two corporations was engaged in conducting the business of a common carrier, but that he got his pay by the checks of the Katalla Company. There was evidence that the Copper River Company was paying the license fee required by law as a common carrier; and, while there was evidence tending to show that the Katalla Company did not pay such a license, there was no positive proof to that effect. *And whether it paid a license fee or not, it was a common carrier within the provision that the Employers' Liability Act shall include 'persons or corporations charged with the duty of the management and operation of the business of a common carrier.'*" (Emphasis added.)

This is not a case where a large industrial corporation has railroad facilities as part of its industrial operation. In those the railroad is used as a plant facility and its owner does not hold itself out as a common carrier to transport interstate commerce. There are numerous cases holding that such operations do not make the owner of the railroad a common carrier subject to the Act. See an excellent discussion in Kelly v. General Electric Co., D.C.E.D.Pa.1953, 110 F.

Supp. 4. However, no case of this type is in point here.

■ This case is more nearly akin to the situation where one railroad controls another so completely that there is in fact but one railroad system. In that situation the dominant company is held liable under the Act for injuries caused by the negligence of the subsidiary company. The leading case on this point is Davis v. Alexander, 269 U.S. 114, 117, 46 S.Ct. 34, 35, 70 L.Ed. 186, where the Supreme Court said:

"  *  *  * Where one railroad company actually controls another and operates both as a single system, the dominant company will be liable for injuries due to the negligence of the subsidiary company. Lehigh Valley R. Co. v. Dupont, 2 Cir., 128 F. 840; Lehigh Valley R. Co. v. Delachesa, 2 Cir., 145 F. 617; Wichita Falls & Northwestern Ry. Co. v. Puckett, 53 Okl. 463, 157 P. 112."

See also: Erie R. Co. v. Krysienski, 2 Cir., 238 F. 142, 143, 145; Southern Ry. Co. v. Crosby, 4 Cir., 201 F.2d 878, 36 A.L.R.2d 1186; Conry v. Baltimore & O. R. Co., D.C.W.D.Pa., 112 F.Supp. 252, 255.

■ The rule enunciated in these cases is subject to the distinction that the dominant or parent corporation in each case was a certificated common carrier and that the question was not whether the railroad sought to be held liable under the Act was a common carrier, but whether the injured person was an employee of the dominant or parent railroad. However, this appears to be a distinction without a difference. The underlying premise of the rule is that the person or corporation actually carrying on and performing the railroad operation in which the employee is injured should be held responsible under the Act. There is no reason why a non-railroad parent company which completely dominates a railroad subsidiary, not only as to stock ownership, but also as to management and operation, should not be held responsible under the Act for negligent injuries to employees of the parent company while performing the railroad duties of the subsidiary. The language used by Chief Judge Parker in Southern Ry. Co. v. Crosby, supra, 201 F.2d at page 882, is very apropos here:

"In the light of this evidence we think that the judge below was clearly right in holding that the operations on the line of the Yadkin were nothing more than a part of the operations of the defendant carried on through its agents and servants, and that defendant cannot escape liability for their negligence because the earnings and expenses of the Yadkin were kept separate from defendant's other expenses with separate payment to the employees for services performed on this line. Crosby was employed by defendant; he was assigned by defendant to work on the Yadkin line, an assignment he could not refuse; and he was injured as a result of negligence in the operations which defendant's employees were carrying on over a line of railroad which it controlled and operated as completely as it did its own main line. There is no reason in law or in common sense why the court should not look at the realities of the situation or why it should be blinded by the forms which defendant adopted in carrying on the business involved."

His description of the relationship between the Yadkin Railroad and the Southern Railway Company there is applicable to Almanor and Collins here:

"  *  *  * The Yadkin Railroad, however, was little more than a corporate pocket of defendant, maintained for accounting purposes under an order of the Interstate Commerce Commission. It owned no rolling stock and the few trains which were operated over its line were operated by employees of defendant who were at all times completely under defendant's control and direction." 201 F.2d at page 881.

■ This conclusion does not require that the corporate entity of Almanor be disregarded. It simply places responsibility under the Act upon the party performing the railroad functions covered by the Act. Here the parties to the contract put Collins in the business of managing and operating a railroad engaged in interstate commerce. This act of the parties did not take Almanor out of the railroad business, it put Collins in the railroad business. The conclusion that Almanor cannot escape liability under the Act by assigning nondelegable railroad duties to another, or that the contract here could not exempt Almanor from liability under the Act, 45 U.S.C.A. § 55, does not and should not limit the responsibility of Collins under both the contract and practices followed. The contract is only void to the extent it attempts to exempt Almanor from liability, and delegation of railroad duties to Collins is prohibited only to the extent it would attempt to exempt Almanor from liability. The beneficient and humane purposes of the Act should not be frustrated by denying relief to employees in interstate commerce who were actually carrying on the railroad functions of their employer because the employer is not a certificated common carrier, but chooses to operate a railroad in interstate commerce by contract with a certificated common carrier.

This Court has jurisdiction of the subject matter both as to Almanor and Collins. To the extent that findings are required the findings of fact and conclusions of law herein found and made are the findings and conclusions of the Court. Federal Rules of Civil Procedure, Rule 52(a).

It Is, Therefore, Ordered, Adjudged And Decreed that defendants' motion to dismiss, as set forth in paragraph II of the Second Answer and Defense of defendants' answer, be, and the same is hereby denied.

It Is Further Ordered that this Court has jurisdiction of the subject matter of this action.