A99A0397. THAXTON v. NORFOLK SOUTHERN RAILWAY
COMPANY et al.
(520 SE2d 735)

POPE, Presiding Judge.

After Larry Thaxton was diagnosed with lung cancer, he brought this suit against Norfolk Southern Railway Company and its subsidiary, Alabama Great Southern Railway Company, alleging injury from second-hand smoke. He sued the defendants under the Federal Employers' Liability Act ("FELA"), 45 USC § 51 et seq., claiming that his cancer was caused by the environmental tobacco smoke generated by his co-workers when he stayed in sleeping trailers while working on the railroad's tracks and railyards. After the complaint was filed, Larry Thaxton died. His widow moved to add Norfolk Southern Corporation ("NSC") and Norfolk & Western Railway Company as defendants. The trial court denied the motion, and we granted the interlocutory application to determine whether the court's denial of the motion to add these parties was proper. For the following reasons, we reverse.

The complaint was originally filed on February 12, 1996, by Larry Thaxton, who named as defendants Norfolk Southern Railway and Alabama Great Southern Railway Company. Larry Thaxton claimed that he began working for Norfolk Southern Railway or its subsidiary, Alabama Great Southern Railway Company in 1982. He alleged that defendants failed to provide him with a reasonably safe place to work in that he was repeatedly exposed to second-hand cigarette smoke. He also claimed that defendants' medical agents failed to inform him in a timely fashion about a spot on his lung which they found during a lung X-ray and that because of this delay, the cancer grew and spread undetected in his body.

Although Larry Thaxton initially sued only Norfolk Southern Railway, discovery revealed that it was NSC which was entirely responsible for decisions relating to the no-smoking policy. It was undisputed that Norfolk Southern Railway was not involved in determining the no-smoking policy, and that the railway simply imple-

mented the policy which NSC set.

Accordingly, on June 5, 1997, Larry Thaxton filed a motion to add NSC as a party defendant. In the motion, he asserted that all of the decisions relating to the no-smoking policy were made by NSC and that, accordingly, NSC was liable under FELA. NSC opposed the motion by filing the affidavit of Sandra Pierce, the assistant corporate secretary of NSC, in which she avowed that NSC was not registered as an operating common carrier by rail and that it did not own any rolling stock used to perform common carrier operations by rail in any other state. She further stated that NSC did not operate any trains or employ any people to operate trains. She stated that NSC was a holding company which owned stock in various transportation companies, and that it was the owner of all of the outstanding common stock of Norfolk Southern Railway, which in turn owned all of the outstanding common stock of Norfolk & Western Railway.

Based on the railway's position, on September 22, 1997, Larry Thaxton's widow,[1] Jacqueline Thaxton, individually and as administratrix of the estate of Larry Thaxton, filed another motion to add NSC.[2] Thaxton's theory was that NSC promulgated policies regarding environmental tobacco smoke which harmed the decedent and that it was liable for failure to provide a reasonably safe workplace. In the motion, Thaxton argued that common law remedies against NSC were appropriate based on the previous representations that NSC was not her husband's "employer" within the meaning of FELA. Thaxton claimed that because NSC was not her husband's employer, it could be sued under common law for various damages, including punitives and loss of consortium. Thaxton attached to her motion the affidavit of the NSC corporate secretary avowing that in various respects NSC was not a "common carrier" subject to FELA.

With the motion, Thaxton also attached a copy of her proposed amended complaint in which she claimed that NSC was liable for her husband's wrongful death. Thaxton alleged that NSC failed to adopt a policy which would have protected her husband from the effects of environmental smoke; failed to implement a no-smoking policy; and failed to inform her husband of the presence of a cancerous spot on his lung. The complaint also alleged that NSC acted wilfully and wantonly.

1. Thaxton argues that the court erred in denying her motion to add NSC as a party. Thaxton asserts that neither she nor the railway argues that FELA applies against NSC; instead she contends that

---

[1] It is not clear from the record when Thaxton died.

[2] Although Thaxton also sought to add Norfolk & Western Railway Company as a defendant, her arguments here relate solely to NSC, and we will not refer to Norfolk & Western here.

NSC is liable under common law. She argues that as the entity responsible for promulgating the relevant no-smoking policies, NSC was liable for negligence under state law. Thaxton claims that despite its awareness of the hazards of smoking, NSC consistently refused to adopt a no-smoking policy and that she should be allowed to sue NSC under common law and recover various damages which are unavailable under FELA. See generally *Central of Ga. R. Co. v. Swindle*, 260 Ga. 685, 686 (398 SE2d 365) (1990).

The railroad argues that Thaxton is seeking to circumvent the purpose and exclusivity provisions of FELA. It contends that it is well settled that FELA is the sole and exclusive remedy for injured employees of rail carriers engaged in interstate commerce. Nevertheless, Norfolk Southern argues that though NSC was not Larry Thaxton's employer, NSC is in "vertical privity" with it, and that Thaxton is therefore barred from asserting a common law claim against NSC. In other words, on the one hand, Norfolk Southern argues that the remedies under FELA are the exclusive remedies available to Thaxton; on the other hand, Norfolk Southern argues that FELA is not available to Thaxton in this suit.

We agree with Thaxton that NSC is not immune from suit and that one of these arguments must fail. Despite its creative efforts to protect itself, as promulgator of the policies at issue in this case, NSC is subject to suit. The question thus becomes, is Thaxton's remedy under common law or under FELA?

"It is well established that in enacting FELA, Congress superseded state law remedies in the subject area covered by FELA and provided the exclusive remedy for employees of common carriers injured by the negligence of their employers." (Citations and punctuation omitted.) *Bowers v. Estep*, 204 Ga. App. 615, 616 (1) (420 SE2d 336) (1992). See generally 45 USC § 51 et seq. Thus, in cases in which a plaintiff alleges that a defendant common carrier is liable for acts occurring in the course of the plaintiff's employment with a railroad, a common carrier engaged in interstate commerce, FELA provides the exclusive remedy for the plaintiff's claims that fall within the terms of the Act. *Bowers v. Estep*, 204 Ga. App. at 616 (1).

45 USC § 51 provides that it applies to "[e]very common carrier by railroad while engaging in commerce." Here, both parties claim that FELA does not apply because NSC is not a "common carrier" within the meaning of the act. In support of its position that NSC is not a "common carrier," the railway cites *Edwards v. Pacific Fruit Express Co.*, 390 U. S. 538, 543 (88 SC 1239, 20 LE2d 112) (1968) (refrigerator car company which leased refrigerator cars to railroads and controlled these cars was not "common carrier"); *Wells Fargo & Co. v. Taylor*, 254 U. S. 175, 187 (3) (41 SC 93, 65 LE 205) (1920) (express company was not "common carrier"; term means "one who

operates a railroad as a means of carrying for the public"); *Kelly v. Gen. Elec. Co.*, 110 FSupp. 4, 8 (E.D. Pa. 1953) (General Electric Company, which was engaged in manufacture and sale of electrical equipment, was not a "common carrier by railroad"); and *Malvern Gravel Co. v. Mitchell*, 385 SW2d 144, 148 (Ark. 1964) (gravel company was not a "common carrier"). While these cases discuss the definition of a "common carrier," they are not dispositive of the question raised here: whether a parent holding company is a "common carrier" and, thus, liable under FELA for its subsidiary.

45 USC § 57, which neither party cites, provides the critical definition of "common carrier" for purposes of FELA. That section states that the "term 'common carrier' as used in this chapter shall include the receiver or receivers or other persons or *corporations charged with the duty of the management and operation of the business of a common carrier.*" (Emphasis supplied.)

*Davis v. Alexander*, 269 U. S. 114 (2) (46 SC 34, 70 LE 186) (1925), provided guidance regarding subsidiary railroads, stating: "[w]here one railroad company actually controls another and operates both as a single system, the dominant company will be liable for injuries due to the negligence of the subsidiary company." Id. at 117. Using the same test as to whether the dominant company actually controls and operates the subsidiary, the court in *Southern R. Co. v. Crosby*, 201 F2d 878 (4th Cir. 1953), found that the injured railway worker was an employee of the dominant railroad. In so finding, the court quoted a previous case, stating:

> The mere fact that the [dominant company] owned most of the [subsidiary company] stock did not answer the question, but it assisted; and when to that fac[t] was added the subordinate carrier's method of getting engines, arranging and dispatching trains, and using terminals, there was enough uncontradicted evidence to justify the jury (and in our opinion the court) in holding that the interstate commerce of the Erie System — i.e., of several co-ordinated and centrally controlled carriers — was in acquisition and performance one commerce belonging to the master company. It matters not what we assume the earnings of the controlled railways to have been kept separate and apart . . . , for such earnings were the result of work done for and under the dominant corporation, and as much a part of the latter's business as are the several departments of the modern store, a part of the store business, though each department is owned by its manager, who is not liable for the store's debts.

(Punctuation omitted.) Id. at 882.

Similarly, in *Eddings v. Collins Pine Co.*, 140 FSupp. 622 (D.C. Cal. 1956), the court concluded that a lumber company, which wholly owned and controlled the railroad corporation, was a "common carrier" under FELA. The court stated:

> [t]here is no reason why a non-railroad parent company which completely dominates a railroad subsidiary, not only as to stock ownership, but also as to management and operation, should not be held responsible under the Act for negligent injuries to employees of the parent company while performing the railroad duties of the subsidiary.

Id. at 628. See also *Specht v. Missouri Pacific R. Co.*, 191 NW 905 (Minn. 1923) (the court examined the law regarding the dominant corporation acting as a principal and the subsidiary acting as the agent); *Lone Star Steel Co. v. McGee*, 380 F2d 640 (5th Cir.), cert. denied, 389 U. S. 977 (88 SC 480, 19 LE2d 471) (1967) (court determined that steel corporation which maintained a plant railroad was subject to FELA where a network of tracks was located within the plant and connected to an interstate track operated by a common carrier); compare *In re Chicago, Missouri &c. R. Co.*, 133 BR 438, 441 (N.D. Ill. 1991) (shell corporation which owned no rail lines, real property, railroad cars, or any other assets was not "common carrier by railroad").

"Ordinarily, stockholder and parent corporations are not liable for a corporation's debts." *Selser v. Pacific Motor Trucking Co.*, 770 F2d 551, 554 (5th Cir. 1985). Nevertheless,

> [t]he FELA specifies when a contract or contract-like "device" may be set aside: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void. . . ." 45 U.S.C. § 55.

Id. Although stock ownership is not decisive, nor is the right to set general policies determinative, there are many indications here that NSC so dominated Norfolk Southern Railway that it should be deemed a common carrier for purposes of FELA. This result would be consistent with other cases in Georgia in which NSC has been a party to FELA cases. See, e.g., *Loyal v. Norfolk Southern Corp.*, 234 Ga. App. 698 (507 SE2d 499) (1998); *Norfolk Southern Corp. v. Smith*, 262 Ga. 80 (414 SE2d 485) (1992); *Norfolk Southern Corp. v. Decubas*, 260 Ga. 136 (390 SE2d 216) (1990).

Under 45 USC § 57, it appears that NSC was "charged with the duty of the management and operation of the business" of Norfolk

Southern Railway. There is evidence in the record that NSC maintains a medical department, law department, and a labor relations department, which together created the no-smoking policy. The chairman of NSC was ultimately responsible for the final decisions relating to the no-smoking policies. The record also contains a 300 plus page manual regarding "Safety and General Conduct Rules," which NSC issued for its "railway subsidiaries." Nevertheless, Thaxton designated that only certain portions of the record be forwarded to this court. The original motion regarding adding NSC as a party under FELA theory was not designated as part of the record on appeal, and the parties do not address this issue here. There is no evidence before us regarding the corporate structure of NSC or of Norfolk Southern Railway. There is no evidence regarding the companies' boards of directors, the respective earnings and expenses of the companies, or of any agreements regarding company management between the companies. Moreover, we do not have the parties' arguments regarding this issue. In short, we do not have before us a record which would allow us to decide whether NSC should be considered a "common carrier" for purposes of FELA.

In the event that FELA does not apply, then Thaxton may sue NSC under common law. See generally *Copper River &c. v. Heney*, 211 F. 459 (9th. Cir. 1914); *Gilbert v. CSX Transp.*, 197 Ga. App. 29, 32-33 (3), (4) (397 SE2d 447) (1990). Certainly, there is no basis on which to conclude that NSC would be absolutely immune from suit in this case.

Accordingly, we conclude that the court abused its discretion in failing to grant Thaxton's motion to add NSC as a party. In light of NSC's exclusive role in setting the policy of which Thaxton complains, the court should have allowed NSC to be added as a party. See generally OCGA § 9-11-19. Upon the return of this case to the trial court, Thaxton should be allowed to add NSC as a party defendant to the suit. The court should then conduct a hearing with appropriate evidence of the corporate structures presented in order to determine if NSC dominates Norfolk Southern sufficiently to be considered a "common carrier" for purposes of FELA. In the event that the court determines that NSC is not a "common carrier" for purposes of this FELA action, Thaxton should be allowed to proceed under common law against NSC.

2. Thaxton claims that the trial court erroneously denied her motion to preclude Norfolk Southern from attacking the medical link between environmental tobacco smoke and lung cancer based on the doctrine of judicial estoppel. This argument is based on documents from 1989 in which the railway acknowledged the causal link between environmental tobacco smoke and lung cancer. Thaxton claims that the railway should now be estopped from asserting any

inconsistent position.

The statement on which Thaxton's motion is based was made in 1989 during a dispute regarding NSC's implementation of a no-smoking policy. The Transportation-Communications International Union and NSC and its subsidiary railroads appeared before the Public Law Board for a resolution of the dispute about the no-smoking policy. In defense of its no-smoking policy, NSC stated that such a workplace ban was "both reasonable and necessary to protect all NS employees, customers, and guests against the demonstrated health risks associated with ambient ('second-hand') tobacco smoke." NSC stated: "[m]edical evidence has conclusively established that the inhalation of second-hand smoke ('passive smoking') in the workplace causes disease, including cancer." The affidavit of Dr. John Salb, the Director of Medical Services for NSC, was footnoted and included in the materials which NSC filed. Salb's affidavit stated that according to the 1986 report of the Surgeon General, "disease risk due to the inhalation of tobacco smoke is not limited to the individual who is smoking, but can extend to those who inhale tobacco smoke emitted into the air." More specifically, Dr. Salb stated that the Surgeon General had reached the conclusion that "[i]nvoluntary smoking is a cause of disease, including lung cancer, in healthy nonsmokers."

Contrary to Thaxton's arguments, we conclude that the trial court properly denied the motion to exclude evidence from the railway attacking the causal link between second-hand smoke and lung cancer. We first note that the relevant time period during which Thaxton claimed detriment from his exposure to second-hand smoke began in 1982 with the start of his employment for the railway. Thus, there are seven years before the railway's "position" on second-hand smoke would even be relevant. More importantly, the assertions by Norfolk Southern in 1989 are not subject to judicial estoppel.

> We first caution as to the semantical dangers which surround the term "judicial estoppel" and similar matters of issue preclusion. While a recent decision of this court has used the term (see *In the Interest of K. M. H.*, 209 Ga. App. 194, 195 (2) (433 SE2d 117) [1993]), that case was not referring to exactly the same concept as involved here. Our earlier decision referenced a concept under Georgia law, while we are dealing here with a concept from federal law which has no exact equivalent under Georgia law.

*Southmark Corp. v. Trotter, Smith & Jacobs*, 212 Ga. App. 454, 455 (442 SE2d 265) (1994).

"The federal doctrine of judicial estoppel precludes a party from asserting a position in a judicial proceeding which is inconsistent

with a position previously successfully asserted by it in a prior proceeding." *Southmark Corp. v. Trotter*, 212 Ga. App. at 455.

> The essential function and justification of judicial estoppel is to prevent the use of intentional self-contradiction as a means of obtaining unfair advantage in a forum provided for suitors seeking justice. The primary purpose of the doctrine is not to protect the litigants, but to protect the integrity of the judiciary. The doctrine is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings and is designed to prevent parties from making a mockery of justice through inconsistent pleadings.

(Citations and punctuation omitted.) *Johnson v. Trust Co. Bank*, 223 Ga. App. 650, 651 (478 SE2d 629) (1997).

In this case, the court properly found that the facts do not warrant application of the doctrine. The "position" to which Thaxton's motion refers was Norfolk Southern's position with respect to defending its no-smoking policy. This representation regarding the state of medical research was not a "position" in the sense required by the judicial estoppel doctrine, nor was the position "successful" or "sustained by the court" as the doctrine requires. The reevaluation of the medical evidence which the railway has undertaken in the instant case does not constitute the sort of manipulation of the judicial system which this doctrine seeks to address. In short, there was no evidence that Norfolk Southern Railway will gain an unfair advantage by introducing evidence attacking the causal link between tobacco smoke and cancer, and no judicial body has been misled by the railway's previous position. Accordingly, the trial court did not abuse its discretion in denying Thaxton's motion to exclude evidence attacking the causal link.

3. Thaxton claims that the court erred in denying her motion to determine the admissibility of the statements which were contained in the documents which were filed in 1989 with the Public Law Board. Thaxton argues that OCGA § 24-3-3 makes admissible certain admissions by counsel and that the representations of the attorneys for Norfolk Southern who prepared the documents were admissible as admissions of Norfolk Southern's agents.

The court's order regarding these documents is ambiguous, in that it is unclear whether the court was simply declining to determine the admissibility of the statements at this time, or whether the court was determining that the documents were not admissible. "The trial court has an absolute right to refuse to decide the admissibility of evidence, allegedly violative of some ordinary rule of evidence,

prior to trial. The court may reserve ruling on the admissibility of evidence until it is offered during trial." (Citations omitted.) *Orr v. CSX Transp.*, 233 Ga. App. 530, 531 (3) (505 SE2d 45) (1998). Accordingly, there was no error in the court's ruling.

*Judgment reversed and case remanded with direction. Smith and Eldridge, JJ., concur.*

DECIDED JULY 8, 1999.

*Jones & Granger, John A. Moss*, for appellant.

*Nelson, Mullins, Riley & Scarborough, Richard K. Hines V, Richard B. North, Jr.*, for appellees.