**Silvo CHECUTI, Plaintiff,**

v.

**CONRAIL, Defendant.**

**No. 3:03 CV 7215.**

United States District Court,
N.D. Ohio,
Western Division.

Nov. 18, 2003.

666

E.J. Leizerman, Esq., Law Offices of E.J. Leizerman & Associates, Toledo, OH, Ronald J. Barczak, Esq., Yaeger, Jungbauer, Barczak & Roe, Minneapolis, MN, for plaintiff.

Richard F. Ellenberger, Esq., Law Offices of Robert M. Anspach & Associates, Toledo, OH, for defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Plaintiff's motion for leave to amend complaint (Doc. No. 6) as to which Defendant has filed an opposition (Doc. No. 9). Plaintiff has also filed another motion for leave to amend complaint and to stay Plaintiff's time to file his surreply to Defendant Conrail's motion to transfer (Doc. No. 20) as to which Defendant has filed a response (Doc. No. 24). Plaintiff has filed a reply (Doc. No. 27) as to which Defendant has filed a surreply (Doc. No. 31). Plaintiff has filed a sur-surreply (Doc. No. 34) as to which Defendant has filed a response (Doc. No. 38). Defendant has filed a motion a motion to transfer venue, or in the alternative to dismiss (Doc. No. 7) as to which Plaintiff has filed an opposition (Doc. No. 16). Defendant has filed a reply (Doc. No. 17) as to which Plaintiff has filed a supplemental memorandum in opposition (Doc. No. 40).

This Court has jurisdiction to decide this matter pursuant 28 U.S.C. § 1331, 45 U.S.C. § 51 *et seq.* and 49 U.S.C. § 20301 *et seq.* For the reasons set forth below, Plaintiff's motion for leave to amend complaint (Doc. No. 6) will be denied. Plaintiff's motion for leave to amend complaint and to stay Plaintiff's time to file his surreply to Defendant's motion to transfer (Doc. No. 20) will be granted in part and denied in part. Defendant's motion to transfer will be granted pursuant to 28 U.S.C. § 1404(a).

### BACKGROUND

On June 22, 2001, Plaintiff Silvo Chetcuti("Chetcuti"), a resident of Dearborn Heights, Michigan, was acting within the course and scope of his employment with Defendant Consolidated Rail Corporation ("Conrail") at its Mack Yard in Detroit, Michigan when he allegedly sustained permanent injuries to his neck, back and other body parts. Conrail is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

Plaintiff contends that he fell to the ground and was injured when a sill step malfunctioned as Chetcuti was attempting a joinder of railroad cars. At the time of the alleged incident, Plaintiff was working with Conrail engineer Ron Von Zittwitz ("Von Zittwitz") and Conrail trainman J.W. Murphy ("Murphy"). Defendant disputes that Plaintiff reported the accident. To the extent that Chetcuti did report his injuries, however, Conrail maintains, and Plaintiff does not dispute, that Chetcuti reported the alleged injury to the yardmaster on duty, John Domzalski ("Domzalski"), and spoke with his union representative, William Connell ("Connell"), who in turn contacted Grey of Defendant.

On May 2, 2003, Plaintiff filed the instant action pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et. seq.* and the Federal Safety Appliance Act ("FSAA"), 49 U.S.C. § 20301 *et. seq.* Chetcuti has filed a series of motions seeking leave to amend his complaint. Conrail has filed a motion to transfer venue from this Court to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1404(a), or in the alternative to dismiss.

### DISCUSSION

#### A. PLAINTIFF'S MOTIONS FOR LEAVE TO AMEND COMPLAINT

Plaintiff moves the Court for leave to amend his complaint to add Norfolk Southern Corporation ("NSC") and CSX Corporation d/b/a CSX Transportation, Inc. ("CSX") to facilitate determination of liability and in an apparent effort to derail Conrail's motion to transfer venue or in the alternative to dismiss.[1] Chetcuti asserts that he is not only employed by Conrail but also NSC and CSX, the parent companies of Conrail, because they significantly dominate and control Conrail making them property party defendants under FELA.

■ Under Fed.R.Civ.P. 15(a), the trial court is vested with discretion in granting or denying an amendment. *See Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A trial court may consider a number of factors in making this determination. Those factors include undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed. *Id.* Additional factors may also include the need for additional discovery, strain on the court's docket, or the lack of prejudice as the issue is already known. *See Budd Co. v. Travelers Indem. Co.,* 820 F.2d 787, 792 (6th Cir.1987). Delay alone is insufficient to deny the proposed amendment. *Robinson v. Michigan Consol. Gas Co. Inc.,* 918 F.2d 579, 581 (6th Cir.1990) (citations omitted). Where a party seeks leave to amend under Rule 15(a), "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake,* 49 F.3d 1197, 1202 (6th Cir.1995) (citing *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir.1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974)).

■ In *Kelley v. Southern Pacific Co.,* 419 U.S. 318, 324–25, 95 S.Ct. 472, 42

---

1. Plaintiff's first motion for leave to amend complaint neither sets forth the nature nor includes a copy of the proposed amended complaint, and is therefore denied. *See Clayton v. White Hall Sch. Dist.,* 778 F.2d 457, 460 (8th Cir.1985); *Clonlara, Inc. v. Runkel,* 722 F.Supp. 1442, 1449 (E.D.Mich.1989); *Mulholland v. Pharmacia & Upjohn, Inc.,* No. 4:99 CV 98, 2001 WL 311241, at *9 (W.D.Mich. Feb. 16, 2001).

L.Ed.2d 498 (1974), the Supreme Court held that whether an employee of a wholly-owned subsidiary trucking company was also an employee of its parent railroad company under FELA, which required a master-servant relationship, not a mere principal-agent relationship. *See also Pelliccioni v. Schuyler Packing Co.,* 140 N.J.Super. 190, 356 A.2d 4, 7 (1976). The *Kelley* Court identified three (3) ways that the employee could establish the requisite master-servant relationship for FELA purposes, which include showing that he was: 1) a borrowed servant at the time of his injury; 2) simultaneously acting for two masters; or 3) a sub-servant of a company that was itself a servant of the railroad.[2] *Kelley,* 419 U.S. at 324, 95 S.Ct. 472.

In *Kelley,* the Supreme Court made clear that a master-servant relationship requires a finding that the parent has a general right to control the conduct of an employee or plays "a significant supervisory role" *Id.* at 327, 95 S.Ct. 472. *See also Lindsey v. Louisville & Nashville R.R. Co.,* 775 F.2d 1322, 1324 (5th Cir.1985). That is to say that even though Plaintiff is nominally employed by Conrail he is "sufficiently under the control" of NSC and/or CSX. *Pelliccioni,* 356 A.2d at 7. Moreover, in *Pelliccioni,* the court stated:

> While the element of control is generally an important—even the most important—determinant in ascertaining whether a master-servant relationship exists, control is not the be-all and end-all of the inquiry. All the surrounding circumstances must be considered.

*Id.* at 8.

The *Pelliccioni* court found that there was a genuine issue of fact as to whether the plaintiff was an "employee" of the parent as well as the wholly-owned subsidiary based on the "sub-servant doctrine." In *Pelliccioni,* the court observed that there was significant documentary evidence "strongly suggest[ing] that the main, if not the only reason" for the subsidiary's existence was to further the parent's railroad business, and "that the operations in which [the] plaintiff was engaged when he was injured were in fact directed towards that objective." *Id.* at 9. The two corporations had interlocking directors and the former described itself as a "subordinate and auxiliary" of the parent. *Id.* at 10. The *Pelliccioni* court also recognized that a jury could reasonably find that the subsidiary had no terminals of its own, solicited no business, collected no charges and was completely dependent on its parent for work. *Id.*

While not labeled as such, there are a number of FELA cases that are consistent with the sub-servant doctrine. *See Davis v. Alexander,* 269 U.S. 114, 46 S.Ct. 34, 70 L.Ed. 186 (1925); *S. Ry. Co. v. Crosby,* 201 F.2d 878 (4th Cir.1953); *Eddings v. Collins Pine Co.,* 140 F.Supp. 622 (N.D.Cal. 1956); *Thaxton v. Norfolk S. Ry. Co.,* 239 Ga.App. 18, 520 S.E.2d 735 (1999).[3] In *Davis,* the Supreme Court stated: "Where one railroad company actually controls another and operates as a single system, the

---

2. Ordinarily, a parent corporation "is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). However, the actions of a parent company that deviate from accepted norms of corporate behavior, in terms of degree and detail, can give rise to direct liability. *Id.* at 72, 118 S.Ct. 1876.

3. The Court also observes that 45 U.S.C. § 57 provides:

    The term "common carrier" as used in this chapter shall include the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier.

dominant company will be liable for injuries due to the negligence of the subsidiary company." *Davis,* 269 U.S. at 117, 46 S.Ct. 34. Though acknowledging that the facts of the case were unusual in that a wholly-owned subsidiary railroad had fully delegated its operating affairs to its non-railroad parent, the *Eddings* court asserted:

There is no reason why a non-railroad parent company which completely dominates a railroad subsidiary, not only as to stock ownership, but also as to management and operation, should not be held responsible under [FELA] for negligent injuries to employees of the parent company while performing the railroad duties of the subsidiary.

*Eddings,* 140 F.Supp. at 628.

In *Thaxton,* the decedent (original plaintiff), who alleged that he died due to second hand smoke, moved to add NSC as a defendant, arguing that NSC had made of all of the decisions relating to the configuration of the no-smoking policy that Norfolk Southern Railway merely implemented. NSC's corporate secretary responded by way of affidavit that NSC was not a common carrier, and that it was a holding company that did not own any rolling stock to perform such functions.

Subsequently, the decedent's widow, individually and as administratrix of her husband's estate, moved to add NSC, which the trial court denied, arguing that she should be allowed to pursue common-law remedies in light of NSC's representations that it was not the decedent's "employer." The *Thaxton* court asserted that the trial court's decision was in error, and defined the appropriate issue to be whether the plaintiff's suit should proceed under FELA or common-law, which turned on "whether a parent holding company is a 'common carrier' and, thus liable under FELA for its subsidiary." *Thaxton,* 520 S.E.2d at 738–39. In *Thaxton,* the court stated:

Although stock ownership is not decisive, nor is the right to set general policies determinative, there are many indications here that NSC so dominated Norfolk Southern Railway that it should be deemed a common carrier for purposes of FELA.

*Id.* at 739.[4] *See also Bestfoods,* 524 U.S. at 72, 118 S.Ct. 1876 (asserting that activities consistent with a parent's investor status such as oversight of finance and budgetary choices, monitoring performance and expression of general policies and procedures do not give rise to liability); *Durham v. S. Ry. Co.,* 256 F.Supp. 879, 880 (W.D.Va. 1966) (citing *Garrett v. S. Ry.,* 278 F.2d 424 (6th Cir.1960); *Ky. Elec. Power. Co. v. Norton Coal Min. Co.,* 93 F.2d 923 (6th Cir.1938)) (noting that the parent railroad's ownership of "a majority (or even all) of the stock" of its subsidiary railroad, and the identity of officers, was "not insufficient to hold the subsidiary to be a mere alter ego of the parent").

The *Thaxton* court observed that the record showed NSC maintained medical, law and labor relations departments which created the no smoking policy, and that NSC's chairman made the final decisions regarding the policy. The record also contained a lengthy manual on safety and conduct, which NSC promulgated for its subsidiaries. On the other hand, the was no evidence regarding NSC and its subsidiaries corporate structure, and treatment of earnings and expenses. Though determining that NSC should be added as a defendant the court remanded the case for a hearing to determine if NSC sufficiently dominated Norfolk Southern Railway to be

---

**4.** The *Thaxton* court noted that "[t]his result would be consistent with other cases in Georgia in which NSC has been a party to FELA cases." *Id.* (citations omitted).

a common carrier under FELA, or if the plaintiff should seek remedy under common law.

■ Here, Conrail offers the affidavits of Randy R. Murdock, the Assistant Claims Manager for CSX Transportation, Inc. (Doc. No. 24, Ex. 1), and Ronald S. Bedra, the District Claim Manager for NSC (Doc. No. 24, Ex. 2), which aver that Plaintiff was not employed by CSX Transportation or NSC, respectively. Conrail also asserts that CSX and NSC are holding companies that do not directly operate any railroads. Though Plaintiff contends that NSC and CSX both dominate and control Conrail, Chetcuti concedes that this might not be the case with CSX, but vigorously maintains this position as to NSC.

Plaintiff maintains that Conrail is a terminal and switching agent for NSC. Checuti also points out that Bedra, NSC's claims agent, is the designated claims agent investigating and handling Plaintiff's claims. (Doc. No. 27, Ex. A). Conrail's web site shows that its furnishes local freight service for NSC. (Doc. No. 27, Ex. B). Plaintiff alleges that NSC owned the rail car at issue and contributes to payment of Chetcuti's earnings. While Conrail asserts that the corporate structure of Conrail, NSC and CSX may be easily be determined, Chetcuti's asserted need goes beyond the mere organizational structure to include matters of control and ownership of equipment. In as much as no single factor is determinative, the evidence which is in the record, combined with that which is not, would be pertinent to determine if NSC sufficiently controls and dominates Conrail. Even though it may ultimately prove to be of no consequence, the Court would be remiss to prohibit Chetcuti from adding NSC as a party defendant, especially given the early stage of this matter.

■ Plaintiff also seeks to add a new count premised upon counsel's expectation that Conrail will contend that an employee's injury and damage was the result of a pre-existing injury. Specifically, Chetcuti asks to add as new count through the following "clarifying" paragraph:

Plaintiff states said injuries and damages pled above were the direct and proximate result of the negligence of Defendants and/or its employees, officers, or agents on June 22, 2001 as asserted above, or by the negligence of Defendant and/or its employees, officers, or agents in failing to provide a reasonably safe place to work and/or equipment for the Plaintiff to perform his duties over a preceding period of many years, up to and including June 22, 2001. Plaintiff makes this allegation in part based on information and belief that said injuries predate the alleged date of the incident resulting in trauma. *If Defendants make this assertion then Plaintiff states that any preexisting condition is the result of Defendants' negligence, and that said negligence is the result specifically including, but not limited to, Defendant Conrail's negligence and damages to Plaintiff occurring in Defendant's Stanley Yard in Wood County, Ohio as well as the States of Michigan and Indiana.* (emphasis added).

(Doc. No. 34, Ex. 1, ¶ 13).

The Court will not linger on this proposed amendment other than to note that it fails to state a claim, and is therefore futile. Plaintiff's motions to amend his complaint is granted to the extent that he seeks to add NSC. Accordingly, Chetcuti's second motion for leave to amend his complaint and to stay Plaintiff's time to file his surreply to Defendant Conrail's motion to

transfer is granted in part and denied in part.[5]

### B. DEFENDANT'S MOTION TO TRANSFER VENUE OR IN THE ALTERNATIVE TO DISMISS

■ Defendant moves the Court to transfer venue, or in the alternative to dismiss Chetcuti's complaint pursuant to 45 U.S.C. § 56, 28 U.S.C. § 1406(a)[6] or 28 U.S.C. § 1404(a). 45 U.S.C. § 56 provides in relevant part:

> Under this chapter an action may be brought in a district court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action.

Relatedly, 28 U.S.C. § 1406(a) states:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Conrail is a Pennsylvania corporation with its principal place of business in Pennsylvania. (Doc. No. 7, Ex. A, Broder Aff., ¶ 3). Moreover, Conrail maintains that its operations are limited to Michigan, Pennsylvania and New Jersey. *Id.* at ¶ 5. Conrail also asserts that it neither has offices or employees in Ohio, nor do its trains and/or employees operate in Ohio. *Id.* at

¶¶ 6–7. Nevertheless, in light of the fact that the Court has granted Plaintiff's motion to add NSC as a defendant, and Conrail does not dispute Chetcuti's contention that NSC conducts business within the Northern District of Ohio, venue is technically proper under 45 U.S.C. § 56. Thus, Defendant's motion to transfer and/or dismiss is denied to the extent it relies on 28 U.S.C. § 1406(a).[7]

This, however, does not end the Court's inquiry as Conrail also seeks to transfer this matter to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Plaintiff does not dispute that the case could have been brought in the United States District Court for the Eastern District of Michigan.

■ The Court must decide whether transfer is warranted despite the general rule that substantial weight is afforded to Plaintiff's choice of forum in FELA actions. *Hayes v. Chesapeake & Ohio Ry. Co.,* 37 Ohio Misc. 109, 374 F.Supp. 1068 (1973). In the context of FELA actions, "[t]he defendant is required to spell out a clear case of convenience definitely and unequivocally, and to show a strong case

---

**5.** The Court need not address Chetcuti's request that he be granted fourteen (14) days to voluntarily dismiss his suit without prejudice if not granted leave to amend his complaint.

**6.** Plaintiff's assertion that Conrail's motion to transfer based on improper venue is untimely is baseless. The defense of improper venue is waived if not raised in a party's first response to a complaint whether that be its Answer or a pre-Answer motion to dismiss. *See* FED. R.CIV.P. 12(b); FED.R.CIV.P. 12(g) FED.R.CIV.P. 12(h)(1). *See also* MOORE'S FEDERAL PRACTICE § 111.36[2][a] at 111–172–73 (3d. ed.). Con-

rail properly asserted the defense of improper venue as the seventh affirmative defense in its Answer, which Chetcuti attached to his opposition to Defendant's motion to transfer venue, or in the alternative to dismiss. (Doc. No. 16, Ex. A).

**7.** The Court need not address Plaintiff's contention that Conrail's solicitation of business over the internet is sufficient to enable Chetcuti to maintain suit here under 45 U.S.C. § 56.

for transfer, regardless of what the showing might be in another type of action." *James v. Norfolk and W. Ry. Co.*, 430 F.Supp. 1317, 1319 (S.D.Ohio 1976).

■ The factors that weigh in the Court's analysis include: "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice." *MCNIC Oil & Gas Co. v. IBEX Res. Co.*, 23 F.Supp.2d 729, 738–39 (quoting *Helder v. Hitachi Power Tools*, 764 F.Supp. 93, 96 (E.D.Mich.1991)). *See also Moses*, 929 F.2d at 1136–37. The Court also considers the relative congestion of the forums, the public interest in local adjudication, and the relative familiarity of the courts with the applicable law. *See* MOORE'S FEDERAL PRACTICE § 113.[1][b] at 111–66–67.

■ Plaintiff argues that Conrail has failed to meet its burden as Chetchui's treating physicians and potential rehabilitation or economic experts are found within the Northern District of Ohio. Chetcuti contends that he has also received medical care at Vision Open MRI in Sylvania, Ohio. Plaintiff also maintains that all witnesses and the location of the alleged incident are within this Court's subpoena power under Fed.R.Civ.P. 45(b). Conrail, however, persuasively argues that the weight of all relevant factors demonstrates that the next station stop for this matter should be the United States District Court for the Eastern District of Michigan.

While transfer of this case to Michigan may impose some added costs to Plaintiff due to the location of his treating physicians, and potential experts; Chetcuti resides in Dearborn Heights, Michigan; Conrail operates in Detroit, Michigan not in Ohio, and has neither offices nor employees in Ohio; Conrail maintains, and Plaintiff does not contravene, that the employees with whom Plaintiff was working with at the time of the incident, Von Zittwitz and Murphy, reside in Rochester and Belleville, Michigan, respectively; Domzalski, the yard master to whom Plaintiff reported his injury lives in Taylor, Michigan; Connell, Chetcuti's union representative, resides in Ferndale, Michigan, and Grey, Conrail's supervisor with whom Connell spoke lives in Taylor, Michigan.

Conrail also contends that Chetcuti was treated for his purported injuries by Dr. William Gonte of Livonia, Michigan, and Drs. Henry Gonte/Martin Solomon of Inkster, Michigan. Bedra, the NSC claims agent whose involvement Plaintiff relies on in part to add NSC as a Defendant, works out of Dearborn, Michigan. (Doc. No. 27, Ex. A). The alleged incident occurred at Conrail's Mack Yard in Detroit, Michigan. Chetcuti's claims are premised on federal law, and transfer of this case would further the goal of public interest in local adjudication as this is at its heart truly a Michigan case. Thus, Conrail's motion to transfer venue to the United States District Court for the Eastern District is granted pursuant to 28 U.S.C. § 1404(a).

### CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to amend complaint (Doc. No. 6) is denied. Plaintiff's motion for leave to amend complaint and to stay Plaintiff's time to file his surreply to Defendant's motion to transfer (Doc. No. 20) is granted in part and denied in part. Defendant's motion to transfer venue to the United States District Court for the Eastern District of Michigan, or in the alternative to dismiss Plaintiff's claims

(Doc. No. 7) is granted pursuant to 28 U.S.C. § 1404(a).

IT IS SO ORDERED.

*JUDGMENT ENTRY*

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiff's motion for leave to amend complaint is denied. (Doc. No. 6).

FURTHER ORDERED that Plaintiff's motion for leave to amend complaint and to stay Plaintiff's time to file his surreply to Defendant's motion to transfer is granted in part and denied in part. (Doc. No. 20).

FURTHER ORDERED that Defendant's motion to transfer venue is granted pursuant to 28 U.S.C. § 1404(a). (Doc. No. 7).

FURTHER ORDERED that the Clerk of Court shall transfer this case to the United States District Court for the Eastern District of Michigan.