**BOWLES, Price Administrator, v. BATSON.**
**Civil Action No. 524.**

District Court, W. D. South Carolina,
Greenville Division.

Aug. 22, 1945.

Marion Moise, Enforcement Atty., Office of Price Administration, of Columbia, S. C., for plaintiff.

Price & Poag, of Greenville, S. C., for defendant.

WYCHE, District Judge.

In this action the plaintiff seeks judgment against the defendant for treble damages under the provisions of the Emergency Price Control Act of 1942, as amended and extended, 50 U.S.C.A.Appendix § 901 et seq., and an injunction enjoining the defendant from violating the provisions of the same. The cause is now before me upon motion of plaintiff for summary judgment under Rule 56, Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

The complaint alleges, in substance, that the defendant sold and delivered dressed hogs, or wholesale pork cuts, at a price higher than the maximum price prescribed by Revised Maximum Price Regulation No. 148; beef and veal carcasses and beef and veal wholesale cuts at a price higher than the maximum price prescribed by Revised Maximum Price Regulation No. 169; beef livers and other commodities at a price higher than the maximum price prescribed by Maximum Price Regulation No. 398; that the defendant failed to keep certain records required by these regulations; that the sales of the said commodities were made at wholesale to persons who bought the same for use or consumption in the course of trade or business; that these sales were made between December 1, 1943, and August 20, 1944, both inclusive, and the defendant charged and received the sum of One Thousand, Eight Hundred, Ninety Three and 57/100 ($1,893.57) Dollars, in excess of the applicable legal ceiling price which could have been charged.

After the defendant filed his answer[1] plaintiff served upon him a written request for admissions, under Rule 36, Rules of

---

[1] "1. Defendant denies each and every allegation in the said complaint contained except such as may be here after expressly admitted. Further answering the complaint defendant admits the allegation of paragraphs one and two thereof.

"2. All the remaining allegations of the complaint which in any manner charge defendant with violating the Emergency Price Control Act are denied and strict proof thereof is demanded.

"3. Defendant further answering complaint alleges that for 10 years he has been engaged in the wholesale meat business in Greenville County and vicinity. That he is a young man 31 years of age, with only a grammar school education. That he has worked hard to build up an honest busi-

Civil Procedure, in which he asked the defendant to make the following admissions for the purpose of this action only, and subject to all pertinent objections to admissibility which may be interposed at the trial: "1. The defendant made the sales of the various meat items shown on Plaintiff's Exhibit A, which is attached to the Complaint, on the various dates, to the various purchasers, and charged and received the various prices shown thereon. 2. All of said sales were made in the course of trade or business, none at retail, and none to the ultimate consumer of the meat items so sold. 3. All of the meat items described on Plaintiff's Exhibit A were delivered by the defendant at a distance of not more than fifty (50) miles from the place where the

ness, and alleges that he has acquired an unblemished reputation for honesty and upright conduct throughout this community. That he has always kept only a simple record of his business, as he could not afford to employ an experienced bookkeeper. That his wife aids him in keeping his records.

"4. That throughout the years defendant has almost invariably purchased the cattle, hogs, etc. processed by him in his business on the public market of Greenville and vicinity. That the principal market place in Greenville County is Bruce's Livestock Market on the Buncombe Road, where large numbers of hogs and livestock are auctioned to the highest bidder for cash. That in every phase of the marketing the business is highly competitive. That defendant, also, buys livestock at the Asheville Livestock Yards, Asheville, North Carolina, Northeast Georgia Livestock Association, Athens, Georgia, and also buys a lot of local cattle.

"5. That defendant has a number of local customers to whom he sells dressed beef, pork, etc., but as above alleged defendant has to buy the animals slaughtered by him on the open and competitive market. That defendant has these animals slaughtered at Zaglin's Abbatoir and delivers the dressed product to his customers, and his price to his customers is always based upon the price which he has to pay for the animals, plus abbatoir charges, transportation costs in delivering to his customers, and a reasonable profit.

"6. That since the passage of the Act, defendant until recently conducted his business as he had always conducted it, making no changes whatsoever in order to evade or dodge the law, or the O.P.A. regulations. That he had an honest business and continued to conduct it as an honest man. That he kept such records as enabled him to fairly and honestly deal with all of his customers. That defendant did not know that the O.P.A. had any particular or special records which they required a wholesale meat dealer to keep, and was only informed of such requirements about the time this action was brought against him. That since he was notified by the O.P.A. representative that such records were required, and since he was shown the type of records demanded, the defendant has faithfully and to the best of his ability kept such records and will continue to do so.

"7. Defendant admits that the O.P.A. established ceiling prices for dressed beef and pork, etc. applicable to this section of the United States, but the O.P.A. did not, as defendant is informed and believes establish any ceiling prices for the livestock farmer or livestock dealer, who were permitted to sell livestock, etc. at whatever prices they could get. That as aforesaid alleged defendant had to purchase the live animals slaughtered by him on the open market in competition with many other dressed meat dealers, wholesalers, etc., and in many instances defendant was forced to pay prices in excess of the ceiling price which had been given to wholesale dress meat dealers.

"8. That at the times mentioned in the complaint there was often a great scarcity of beef, pork, etc. on the Greenville Retail Market. Retail meat dealers were frequently without any meat to sell to their retail customers. That defendant himself was forced to pay auction prices in excess of the ceiling prices fixed by the O. P.A. for defendant and others in his class. That defendant's customers informed him that they must feed the public and supply them with meat and in effect constituted defendant as their agent to get the dressed beef and hogs for them and that they would absorb the differences themselves and sell it retail to their customers within the retail ceiling prices. That defendant understood the regulations were made to protect the customer public and defendant alleges that in no event did any of his retail market customers sell any meat secured from him at over the established ceiling price and on all occasions defendant informed his customers that he could not buy the animals at less than his ceiling price, due to the fact that the livestock raiser and dealer were permitted to sell without any ceiling price. That defendant is informed and believes that at the times mentioned in the complaint the O.P.A. had not given the retail meat dealers any ceiling prices at which they could purchase dressed meat, nor had said retail dealers been informed of the ceiling prices applica-

various animals from which said items were derived were slaughtered. 4. None of the dressed hogs sold by the defendant were sold to a certified hog processor, and all were prepared shipper style, i. e., dressed with the head on. 5. The defendant at the times alleged in the Complaint was and still is a resident of the Western District of South Carolina and the Greenville Division of this Court. 6. Deliveries of various meat items were made by the defendant to the following customers, at the following distances from the place where the animals from which said items were derived were slaughtered:

complaint are certified hog processors and he, therefore, will admit Statement No. 4. 5. Statement No. 5 is admitted, defendant being a resident of the Western District of South Carolina. His home is at Greenville, South Carolina. 6. As to Statement No. 6, at least one of the alleged distances set forth is entirely wrong, to-wit, Marietta, S. C., which is only fifteen miles from Greenville County Court House, and as this defendant demands a right to cross examine the parties named as to their places of business, distances, etc., and as to defendant's manner and method of dealing with them, he will not admit Statement No. 6. 7. As

| Customer | Distance |
| --- | --- |
| The Basketeria, Greenville, S. C. | Not over 25 Miles |
| The Piggly Wiggly, Greenville, S. C. | Not over 25 Miles |
| The Kash and Karry Gro., Greenville, S. C. | Not over 25 Miles |
| League's Grocery, Traveler's Rest, S. C. | Not over 25 Miles |
| The Combination Stores, Greenville, S. C. | Not over 25 Miles |
| The Marietta Cash Grocery, Marietta, S. C. | Over 25 Miles But Under 50 Miles |

7. The only record of his sales of various meat items kept by the defendant during the times referred to in the Complaint herein are the records set forth in Plaintiff's Exhibit C, attached to said Complaint."

The defendant filed the following answer to plaintiff's request for admissions: "1. Defendant will not admit as true the facts contained in Statement No. 1. Neither will the defendant admit the truth of the affidavits referred to in said statements. Defendant claims the right to cross examine the affiants. 2. Defendant refuses to admit the facts alleged in Statement No. 2. 3. Defendant will admit that his business as a wholesale meat dealer is conducted within a radius of fifty miles of Greenville, South Carolina, where he had his cattle, hogs, etc. slaughtered for sale. In order to carry on his business, however, defendant is compelled to make purchases of cattle, etc. in the Asheville, N. C. Stock Yards or markets, which is more than fifty miles from Greenville. 4. As far as defendant knows, none of his customers named in the

to Statement No. 7, defendant refers to his verified answer in this case. Defendant for many years before the war conducted an honest wholesale meat business in Greenville, S. C., and has always kept sufficient records to carry on a successful and honest business of that type. Defendant did not know of any particular form of bookkeeping records required by the O.P.A., and admits that he did not keep these records until he was informed about them, and supplied with them by an O.P.A. representative. Since he was enlightened by the O.P.A. on the question of records, he has kept such records. Insofar as Statement No. 7 is not inconsistent with the above declaration defendant admits it. The above constitutes the defendant's answer to the request of plaintiff served upon defendant's counsel on February 24, 1945."

Whereupon plaintiff filed a motion for summary judgment under the provisions of Rule 56, Rules of Civil Procedure, upon the following grounds: "1. The facts set forth in the plaintiff's Request for Admissions

ble to the wholesale dealers. Therefore, when the defendant informed his customers that he could not secure meat for them within the wholesale ceiling prices he was directed to get the meat at such prices as he could and they would absorb the difference and thus protect the retail purchaser. That in no instances has defendant ever passed on to a retail meat dealer any dressed meat, pork, etc. at a price over his

ceiling price without fully explaining the situation to the retailer.

"9. For the foregoing reasons defendant alleges that under a fair construction of the Emergency Price Control Act that he has not violated the same, and defendant would not be amenable to any regulations of the O.P.A. which goes beyond the fair scope of the act."

under Rule 36, which Request was served on the attorneys for the defendant herein on February 24, 1945, are deemed admitted in that the defendant has failed to serve on the plaintiff or his attorneys within the period designated in the Request a sworn statement denying specifically the matters of which an Admission was requested or setting forth in detail why the defendant could not truthfully either admit or deny these matters. 2. The complaint, Answer, Request for Admissions, and the Affidavit of one of the plaintiff's attorneys herein show that there is no genuine issue as to any material fact and that the plaintiff is entitled to a judgment for the relief prayed for in the Complaint as a matter of law."

It will be seen from defendant's answer to the plaintiff's request for admissions that the defendant admits requests Nos. 3, 4 and 5, but refused to admit requests Nos. 1, 2, 6 and 7.

Rule 36(a), Federal Rules of Civil Procedure, provides: " * * * Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such further time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission a sworn statement *either denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully either admit or deny those matters."* (Emphasis added)

Rule 56 is a procedural device for the disposition of cases in which there is no material issue of fact and its purpose is to eliminate a formal trial of cases where only questions of law are involved. Pen-Ken Gas & Oil Corporation v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871; Bowles v. Babar, D.C., 54 F.Supp. 453.

Failure to serve a sworn statement either denying matters of which admissions are requested or setting forth in detail the reasons why a party cannot either admit or deny such matters, resulting in admission of facts alleged in the complaint, in compliance with Rule 36(a) has been held to authorize a summary judgment. Walsh v. Connecticut Mut. Life Ins. Co., D.C., 26 F. Supp. 566.

Exhibit A, attached to the complaint, lists the various sales made by the defendant, the dates of sales, the amount charged and received by the defendant therefor.

The defendant did not comply with the provisions of the Rule 36, and therefore, the facts set forth in plaintiff's request for admissions for the purpose of this case are deemed admitted.

On consideration of the complaint, answer, request for admissions, and the admissions made, I conclude that there is no material issue of fact for determination and that the only questions before me are questions of law.

The defendant made various sales at prices in excess of the applicable legal ceiling prices between the dates of December 1, 1943, and August 20, 1944, both inclusive, and as a result thereof, charged and received on these sales the sum of One Thousand, Eight Hundred, Ninety Three and 57/100 ($1,893.57) Dollars, in excess of the applicable legal ceiling price which could have been charged for the beef, veal, dressed hogs, and beef livers so sold, in violation of the regulations hereinabove referred to.

The sales of these commodities were made at wholesale to persons who bought the same for use or consumption in the course of trade or business. The plaintiff, Administrator of the Office of Price Administration, under the facts of this case, is authorized to institute this action on behalf of the United States. Emergency Price Control Act of 1942, as amended and extended, 50 U.S.C.A.Appendix § 925(e).

The remaining question is the amount of damages to be awarded the plaintiff. Section 205(e) (2) of the Act, 50 U.S.C.A. Appendix § 925(e), with respect to the amount of the recovery in treble damage actions, provides: " * * * In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, *That such amount* shall be the amount of the overcharge or overcharges or $25, whichever is greater, *if the defendant proves that the violation of the regulation, order, or price schedule in ques-*

*tion was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation."* (Emphasis added)

■ The word "wilful" means knowingly and deliberately. It does not mean that such violations were with evil intent or purpose, but rather denotes conduct which is intentionally knowing or voluntary as distinguished from accidental. Zimberg v. United States, 1 Cir., 142 F.2d 132. The wording of the statute places the burden on the defendant to prove not only that the violation was not wilful but also that it was not the result of failure to take practicable precautions against the occurrence of the violation. This affirmative defense was not pleaded, but, on the other hand, the defendant by his answer has admitted that all sales made in excess of the ceiling price were made with his full knowledge and further that he informed his customers that said sales were in excess of the ceiling price and his reasons therefor. These allegations will negative any claim which could be made by the defendant that any violation resulting from the sales was neither wilful nor the result of the failure to take practicable precautions.

At the time the motion was made before me for summary judgment there was pending in the Emergency Court of Appeals a protest against the validity of Revised Maximum Price Regulation 169 insofar as it applied to non-processing slaughterers. The defendant is what is termed a non-processing slaughterer. This protest was made in the case of Heinz v. Bowles, 149 F.2d 277, 283. On March 29, 1945, the Emergency Court of Appeals held that Revised Maximum Price Regulation No. 169 was invalid "in so far as the maximum prices therein for beef carcasses and wholesale cuts are applicable to non-processing slaughterers as defined in the Directive of October 26, 1943." However, as to the industry as a whole the Court held that this regulation was generally fair and equitable. The same Court on April 2, 1945, vacated the judgment in the Heinz case and granted leave "to either party to introduce directly to the Court, on or before April 30, 1945, or such further time as the Court may hereafter allow, evidence directed to the validity of the Regulation insofar as the maximum prices therein for beef carcasses and wholesale cuts are applicable to non-processing slaughterers as defined in the Directive of the Office of Economic Stabilization dated October 26, 1943."

In an opinion of the Emergency Court of Appeals filed July 31, 1945, in the Heinz case, 150 F.2d 546, the Court has held Revised Maximum Price Regulation No. 169 valid as to non-processing slaughterers and refused to set the regulation aside, stating: "It is sufficient to state our conclusion that the record now contains substantial evidence which, especially in view of recent revisions and enlargements of the subsidy payments, amply supports the Administrator's contention that the regulation is presently valid even as applied to the non-processing slaughterers, whatever it may have been at some period or periods in the past. In this proceeding we are not called upon to render a declaratory judgment as to the validity, or invalidity, of RMPR 169 as of some date in the past. Since, on the entire record, complainants have failed to maintain their burden of establishing that the regulation is presently 'not in accordance with law, or is arbitrary or capricious,' we are without power to set it aside. Section 204(b) of the Emergency Price Control Act, 56 Stat. 32, 50 U.S.C.A.Appendix § 924(b). A judgment will be entered dismissing the complaint."

■ It is clear, then, that the validity of Revised Maximum Price Regulation No. 169 remains unaffected by the foregoing decision, and for the purposes of this action this regulation is valid and binding on this Court. The jurisdiction to consider the validity of a regulation is vested exclusively in the Emergency Court of Appeals pursuant to Title 50 U.S.C.A.App. 924(d), and then only after having first pursued prescribed administrative remedies. Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 83 L.Ed. 834.

■ It is my opinion that under the facts in this case the amount of recovery by the plaintiff against the defendant should be double the amount of the overcharges, which amounts to the sum of Three Thousand, Seven Hundred, Eighty Seven and 14/100 ($3,787.14) Dollars.

An order for judgment and a decree of permanent injunction, conformable to the views herein expressed, will be signed on presentation.