### SOUTHERN RY. CO. v. CROSBY.
#### No. 6518.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 6, 1953.

Decided Feb. 2, 1953.

---

8. Particularly Werner A. Wieboldt, 1945, 5 T.C. 946; Carrie S. Newberry, supra, note 6.

Sidney S. Alderman, Washington, D. C, and Frank G. Tompkins, Jr., Columbia, S. C., (John Gregg McMaster, Columbia, S. C. and Henry L. Walker, Washington, D.C., on brief), for appellant.

Henry Hammer and Henry H. Edens, Columbia, S. C. (Chandler & Chandler, Greenville, S. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal by defendant Southern Railway Company from a judgment for plaintiff in an action for damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51. The action was brought by the administratrix of the estate of O. L. Crosby, a brakeman employed by the Southern Railway Company, who was killed in the derailment of a freight train on which he was working. This train was being operated on the line of the Yadkin Railroad Company between Salisbury, N. C. and Albemarle, N. C.; and defendant contended that Crosby at the time of the derailment was an employee of the Yadkin Railroad Company and not an employee of defendant, but the judge instructed the jury to the contrary. There was a verdict for plaintiff for $200,000, which was reduced to $100,000 by remittitur upon the entry of an order nisi that it would be set aside as excessive unless this were done; and from judgment on the verdict as so reduced defendant has appealed. Defendant asks not for a new trial but that its contention that Crosby was not its employee be sustained and that the court below be directed to enter judgment in its behalf on its motion for judgment n. o. v., which was duly made in that court after denial of motion for directed verdict. The question thus presented for our consideration is whether

880

there was substantial evidence that at the time of the derailment which caused Crosby's death he was working as an employee of defendant. We think that this question should be answered in the affirmative.

A sufficient reason for holding against defendant on the question presented is found in its failure to deny that Crosby was its employee when an admission with regard thereto was demanded pursuant to rule 36 of the Rules of Civil Procedure, 28 U.S.C.A. Among the admissions requested by plaintiff were the following:

"That O. L. Crosby, deceased, was riding in the cab of an engine owned by defendant, Southern Railway Company, which was derailed from the track over which it was proceeding at a crossing known as Kluttz's Crossing near Albemarle, North Carolina, as an employee and while engaged in the employment of the defendant, Southern Railway Company.

"That at the time of the derailment of the cab of the engine as mentioned in the complaint, O. L. Crosby, deceased, was engaged in interstate commerce as an employee of the defendant, Southern Railway Company."

Instead of making a denial under oath of the truth of the matter as to which this admission was asked, the defendant filed an unverified reply as follows:

"You will please take notice that the defendant denies the accuracy of the statements contained in your notice, and refuses to admit the truth thereof."

The trial judge allowed defendant to verify this reply during the course of the trial; but even then it did not meet the requirement of the rule the pertinent portion of which provides:

"Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than 10 days after service thereof or within such shorter or longer time as the court may allow on motion and notice, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters * * *. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party deny only a part or a qualification of a matter of which an admission is requested, he shall specify so much of it as is true and deny only the remainder."

It is manifest that a denial of the accuracy of a statement is not a denial of its essential truth and certainly a refusal to admit does not amount to a denial. Bowles v. Batson, D.C., 61 F.Supp. 839, affirmed Batson v. Porter, 4 Cir., 154 F.2d 566, 568; Riordan v. Ferguson, 2 Cir., 147 F.2d 983, 986; United States v. Schine Chain Theatres, D.C.W.D.N.Y., 4 F.R.D. 109, 111–112; In re Independent Distillers of Kentucky, D.C., 34 F.Supp. 724, 729. Parties may not avoid the failure to deny matters necessarily within their knowledge by giving any such evasive answer as was given here. The rule requires a sworn statement denying "specifically" the matters of which an admission is requested or a statement "setting forth in detail" the reasons why an admission or denial cannot truthfully be given. As said in Barron & Holtzoff, Federal Practice and Procedure, Rules Edition vol. 2 pp. 543, 544:

"A denial in such sworn statement must fairly meet the substance of the requested admission, and when good faith requires that a party deny only partly or with a qualification, a matter as to which an admission is requested, he must specify and admit so much of it as is true and deny only the remainder. The admissions or denials must be forthright, specific, and unqualified. A denial coupled with a general exception of doubtful import, will constitute an admission. A refusal to admit without specific denial or detailed reasons why the respondent cannot truthfully admit or deny, is the equivalent of an admission."

Quite apart from the admission which results from the failure to make a proper denial to the request for admission, the evidence makes it perfectly clear, we think, that Crosby was working as an employee of defendant at the time he received the injury which resulted in his death. He was unquestionably employed by defendant as a brakeman and had been working for defendant in that capacity for a number of years. Defendant's denial that he was its employee is based upon the fact that he was rendering service at the time of his injury on a train which was being operated on the line of the Yadkin Railroad Company and that he was paid for such service from funds of that company. The Yadkin Railroad, however, was little more than a corporate pocket of defendant, maintained for accounting purposes under an order of the Interstate Commerce Commission. It owned no rolling stock and the few trains which were operated over its line were operated by employees of defendant who were at all times completely under defendant's control and direction.

The relationship of defendant to the Yadkin Railroad Company was entirely different from that which existed between defendant and affiliated railroad companies, such as the Alabama Great Southern and the Cincinnati, New Orleans and Texas Pacific, which compose with defendant the Southern Railway System. The Yadkin was one of a group of short line railroads, controlled by defendant through majority stock ownership, whose officers were officers of defendant, whose operation was integrated with that of defendant and whose trains were run by employees of defendant under defendant's control. Prior to 1916, there was no attempt to separate the affairs of these short line railroads from the other operations of defendant. They were operated by defendant and their operations were covered by defendant in its report to the Interstate Commerce Commission. Beginning with 1916 separate reports were required from these roads, which defendant operated but did not lease, and defendant accordingly caused separate reports to be made for them showing their separate earnings and expenses; but these reports were made by officers of the short line roads, who were also officers of the defendant, and represented operations carried on by employees of defendant. The management of the affairs of these roads was in the hands of a vice president in charge of operations, who was also an assistant vice president of defendant, who had an office in defendant's station in Charlotte, N. C., which was not on the line of any of them, and whose salary was paid by defendant, although defendant was reimbursed for it by the short line roads. A single dispatcher at Hickory, N. C., more than fifty miles from the nearest point of the Yadkin, issued the orders for the running of all of their trains.

The Yadkin owned the 35 miles of track between Salisbury and Albemarle, but, as stated, it owned no rolling stock, although it leased two locomotives from the defendant. The total of its assets as shown by the books in 1950 was only $2,198,065 and it had an accumulated deficit of $3,149,800, all of which was represented by indebtedness to defendant, which owned all of its bonds and all of its stock except about one-fourth of the original subscription which was held by a county and certain townships which subscribed for it more than half a century ago.

The trains over the line of the Yadkin were operated by engineers and trainmen who were paid for the service by checks issued by the Yadkin, but who were employed by defendant, were assigned to the job by defendant, worked under the rules of defendant and were subject to defendant's discipline and control. They were employed in the defendant's Charlotte Division, were required before their employment to acquaint themselves with the Yadkin roadbed by riding over it, were granted vacations by defendant even when running exclusively on the Yadkin line, had the right as employees of the Charlotte Division in the exercise of seniority to "bid in" runs on the Yadkin and when running on the Yadkin to exercise seniority to bid in runs on the main line, and as employees on the "extra board" of the defendant at Greenville, S. C were subject to assignment

to runs on the Yadkin. Trains from Salisbury to Albemarle departed from defendant's terminal yards at Spencer and their departure was subject to the control of defendant's Spencer employees.

Crosby lived at Greenville, S. C. and was one of the employees of defendant in its Charlotte Division. He was assigned by defendant's dispatcher to the service in which he lost his life because his name was on defendant's "extra board" at Greenville and he was called by defendant's call boy to the service. He had no option with respect to accepting or not accepting the assignment, and defendant had made this very clear in disciplining others of its employees who had sought to avoid similar service. The labor brotherhood of which Crosby was a member had negotiated an agreement regulating wages and conditions of work on the Yadkin as well as on the Southern and the other roads controlled by it; but there was nothing in this agreement which gave consent of any Southern employee to service on the Yadkin or took him from under the protection and control of the Southern while working on the line of the Yadkin under the Southern's orders.

In the light of this evidence we think that the judge below was clearly right in holding that the operations on the line of the Yadkin were nothing more than a part of the operations of the defendant carried on through its agents and servants, and that defendant cannot escape liability for their negligence because the earnings and expenses of the Yadkin were kept separate from defendant's other expenses with separate payment to the employees for services performed on this line. Crosby was employed by defendant; he was assigned by defendant to work on the Yadkin line, an assignment he could not refuse; and he was injured as a result of negligence in the operations which defendant's employees were carrying on over a line of railroad which it controlled and operated as completely as it did its own main line. There is no reason in law or in common sense why the court should not look at the realities of the situation or why it should be blinded by the forms which defendant adopted in carrying on the business involved. As was said by Judge Hough speaking for the Court of Appeals of the Second Circuit in dealing with a somewhat similar situation affecting the Erie Railroad in Erie R. Co. v. Krysienski, 238 F. 142, 143, 145:

"The mere fact that the Erie Company owned most of the Susquehanna stock did not answer the question, but it assisted; and when to that fact was added the subordinate carrier's method of getting engines, arranging and dispatching trains, and using terminals, there was enough uncontradicted evidence to justify the jury (and in our opinion the court) in holding that the interstate commerce of the Erie System—i. e., of several co-ordinated and centrally controlled carriers—was in acquisition and performance one commerce belonging to the master company. It matters not that we assume the earnings of the controlled railways to have been kept separate and apart (an assumption most favorable to plaintiff in error), for such earnings were the result of work done for and under the dominant corporation, and as much a part of the latter's business as are the several departments of the modern store, a part of the store business, though each department is owned by its manager, who is not liable for the store's debts."

The case presented here is not that of one railroad which lends an employee to another for the purposes of the other's business, but of a dominant railroad which controls and operates the business of a subsidiary and uses its own employees for that purpose. The business handled by the train movement which resulted in Crosby's death was business of the defendant and the movement itself was a part of that business. Defendant may not escape liability for torts committed in carrying on the business merely because the cost thereof is allocated to the corporation that owns the track over which the movement was effected. Davis v. Alexander, 269 U.S. 114, 117, 46 S.Ct. 34, 70 L.Ed. 186; Lehigh Valley R. Co. v. DuPont, 2 Cir., 128 F. 840; Lehigh Valley

R. Co. v. Delachesa, 2 Cir., 145 F. 617. As said by Mr. Justice Brandeis in Davis v. Alexander, supra [269 U.S. 114, 46 S.Ct. 35]: "Where one railroad company actually controls another and operates both as a single system, the dominant company will be liable for injuries due to the negligence of the subsidiary company."

There was no error and the judgment appealed from will be affirmed.

Affirmed.