2001 UT 20

**Royce L. BAIR, dba The Stock Solution, Plaintiff and Appellant,**

**v.**

**AXIOM DESIGN, L.L.C., Brent Watts, and Garry Koralek, Defendants and Appellee.**

**No. 990451.**

Supreme Court of Utah.

March 2, 2001.

Earl D. Tanner, Sr., Earl D. Tanner, Jr., Salt Lake City, for plaintiff.

Matthew W. Driggs, Salt Lake City, for defendants.

RUSSON, Associate Chief Justice:

¶1 Plaintiff Royce L. Bair, dba The Stock Solution ("Stock Solution"), appeals the trial court's dismissal of its breach of contract action against defendant Axiom Design, L.L.C. ("Axiom"). We reverse and remand.

## BACKGROUND

¶2 Stock Solution is a "stock photo agency" that leases photographic transparencies produced by professional photographers for use in media advertising. Between October 1, 1994, and May 31, 1995, Stock Solution entered into four separate contracts[1] ("the contracts") with Axiom. Pursuant to the contracts, Stock Solution delivered to Axiom, and Axiom took possession of, 107 color transparencies to be used in Axiom's advertising.

¶3 Each of the contracts between Stock Solution and Axiom contained identical provisions concerning the use and return of the leased transparencies. Specifically, the contracts provided, inter alia, that in the event the transparencies were not returned by the

---

1. The terms of each contract were set forth in a "Delivery Memorandum."

specified "return date," Axiom would pay the following fees: (1) an initial "service charge" of $30; (2) "holding fee[s]" in the amount of "$5.00 per week per transparency"; (3) "service fees" at a rate of "one and one-half percent per month" on unpaid .balances of invoices beginning thirty days after invoice; and (4) reimbursement for loss or damage of each "original transparency" in the amount of $1500. Additionally, the contracts provided that if Stock Solution undertook the enforcement of the contracts, Axiom would "pay a reasonable attorney's fee ... together with all costs of court."

¶ 4 Axiom allegedly failed to return 37 of the 107 transparencies in breach of the contracts. Of the 37 missing transparencies, 36 were original color transparencies and 1 was a duplicate color transparency.

¶ 5 Accordingly, on November 14, 1997, after repeated telephone calls and written requests demanding return of the transparencies, Stock Solution filed a complaint in the district court against Axiom and its officers, Brent Watts[2] and Gary Koralek.[3] In its complaint, Stock Solution alleged that it had entered into four separate contracts with Axiom for the rental of 107 transparencies; that Axiom failed or refused to return 37 of the transparencies in breach of the contracts; and that Stock Solution was therefore entitled to damages as provided for in the contracts. Specifically, Stock Solution alleged that it was entitled to the following damages: (1) for the 36 missing *original* transparencies, the agreed liquidated value of $54,000 plus sales tax of $3294; (2) for the 1 missing *duplicate* color transparency, $1 plus sales tax of $0.06; (3) holding fees on the 37 missing transparencies in the amount of $23,914.83; (4) service fees and charges as provided for in the contracts; and (5) attorney fees.

¶ 6 After Axiom filed its answer, Stock Solution served Axiom with a written request for admissions pursuant to rule 36 of the Utah Rules of .Civil Procedure. The requests covered numerous aspects of Stock Solution's case including the existence of the contracts, their execution by authorized personnel, the delivery of transparencies by Stock Solution to Axiom, Axiom's failure to return the transparencies, and the reasonableness of the contracts' $1500 liquidated damages clauses. Axiom, however, did not admit or deny the requests, but rather stated: "See Brent Watts' Response to Plaintiff's First Request for Admissions." Although Stock Solution had not served requests on Brent Watts, he nevertheless responded to the requests in his capacity as an officer of Axiom, on Axiom's behalf. In his response, Brent Watts admitted some facts, but as to the pivotal requests, stated: "Defendant does not admit."

¶ 7 On October 22, 1998, the case went to trial without a jury. At the close of Stock Solution's case-in-chief and prior to Axiom's presentation of evidence, Axiom moved the trial court for a "directed verdict" pursuant to rule 50(a) of the Utah Rules of Civil Procedure on the ground that Stock Solution had failed to meet its burden of proof regarding the enforceability of the contracts' $1500 liquidated damages clauses. The trial court agreed, concluding that Stock Solution's evidence established that the actual value of the missing transparencies was "between $5.00 and $10,000.00" and that based on this evidence, Stock Solution had "failed to meet [its] burden of proof in that it ha[d] failed to produce evidence that the $1,500.00 liquidated damages provision [was] a reasonable forecast of the actual damages sustained by [Stock Solution]." Accordingly, the trial court granted the directed verdict, dismissing ·Stock Solution's entire complaint without giving any consideration to the other contractual damages sought by Stock Solution, i.e., service charges, holding fees, and service fees. Furthermore, as part of its judgment, the trial court awarded Axiom attorney fees in the amount of $6390 and costs in the amount of $489, for a total amount of $6879.

¶ 8 On May 12, 1999, Stock Solution appealed to this court. Stock Solution argues

---

2. On October 21, 1998, the parties agreed to voluntarily dismiss any and all claims against Brent Watts as an individual.

3. Although he was named as a defendant in the complaint, Gary Koralek was never served by Stock Solution and therefore, by Stock Solution's own admission, is not a party to this action.

that the trial court erred in granting Axiom's motion for a directed verdict. In this regard, Stock Solution raises five arguments: first, Stock Solution argues that the trial court erred in dismissing its complaint at the close of its case-in-chief and prior to Axiom's presentation of evidence, because it had established a prima facie right to relief; second, Stock Solution argues that the trial court erred by placing the burden of proof regarding the enforceability of the contracts' $1500 liquidated damages clauses on it, rather than on Axiom; third, Stock Solution argues that the trial court erred by not holding the matters presented in its request for admissions admitted and conclusively established for all purposes of this action; fourth, Stock Solution argues that even if the trial court did not err on any of the above-mentioned grounds, its findings of fact were insufficient to sustain its conclusions and judgment; and fifth, Stock Solution argues that if the trial court's order of dismissal is reversed on any of the above-mentioned grounds, its subsequent award of attorney fees to Axiom should also be reversed.

## ANALYSIS

### I. DIRECTED VERDICT OR INVOLUNTARY DISMISSAL

¶ 9 As an initial matter, although Axiom characterized its motion as one for a directed verdict pursuant to rule 50(a) of the Utah Rules of Civil Procedure, and although the trial court purported to grant a directed verdict, it is the substance, not the labeling, of a motion that is dispositive in determining the character of the motion. *See Watkiss & Campbell v. Foa & Son,* 808 P.2d 1061, 1064 (Utah 1991) (stating that an incorrect title placed upon a pleading is not a bar to a party's case); *Gallardo v. Bolinder,* 800 P.2d 816, 817 (Utah 1990) (same).

¶ 10 As its name implies, a motion for a directed verdict under rule 50(a) contemplates only jury trials. *See Wessel v. Erickson Landscaping Co.,* 711 P.2d 250, 252 (Utah 1985). In the context of a bench trial, the directed verdict's procedural counterpart is a motion for involuntary dismissal under

rule 41(b) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 41(b). Therefore, because this case was tried by the court without a jury, we treat Axiom's motion for a directed verdict as one for an involuntary dismissal pursuant to rule 41(b). *See, e.g.,* 75A Am.Jur.2d *Trial* § 855, at 454 (1991) ("When a case is tried by the court without a jury, and a defendant moves for a judgment at the close of the plaintiff's case, the defendant is seeking an involuntary dismissal, not a directed verdict." (footnote omitted)); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2371, at 388 (1995) (stating that "[a] motion for a directed verdict in a nonjury case is treated as if it were a motion to dismiss").

### II. PROPRIETY OF DISMISSAL UNDER RULE 41(b)

¶ 11 Having determined that the trial court's directed verdict is more appropriately treated as an involuntary dismissal under rule 41(b), we now address Stock Solution's first argument that the trial court erred in dismissing its complaint at the close of its case-in-chief and prior to Axiom's presentation of evidence because it had made out a prima facie right to relief.

¶ 12 Rule 41(b) provides in pertinent part: "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown *no right to relief.*" (Emphasis added.) In *Lemon v. Coates,* 735 P.2d 58 (Utah 1987), this court stated that rule 41(b) "is appropriately applied when the trial judge finds that the claimant has ... failed to make out a prima facie case or when the trial judge is not persuaded by the evidence presented by the claimant." *Id.* at 60.

¶ 13 In reviewing a trial court's dismissal under rule 41(b), this court defers to the trial court's findings of fact "and will not overturn its findings if they are adequately supported by the evidence." *Wessel v. Erickson Landscaping Co.,* 711 P.2d 250, 252 (Utah 1985). However, the determination of whether a party has made out a prima facie

case is a question of law which we review for correctness, affording no deference to the trial court's judgment. *See id.* at 253.

¶ 14 A prima facie case has been made when evidence has been received at trial that, in the absence of contrary evidence, would entitle the party having the burden of proof to judgment as a matter of law. *See, e.g., State v. Wood,* 2 Utah 2d 34, 38, 268 P.2d 998, 1001 (1954). The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages. *See Nuttall v. Berntson,* 83 Utah 535, 543, 30 P.2d 738, 741 (1934).

¶ 15 In the present case, Stock Solution offered, and the trial court received, unrebutted evidence at trial, by way of testimony and exhibits, that written contracts were made between the parties and that pursuant to the terms of the contracts, Stock Solution agreed to lease to Axiom 107 color transparencies for use in Axiom's advertising.[4] The contracts expressly provided that for every transparency returned after the contractual return date, Axiom agreed to pay (1) an initial "service charge" of $30; (2) "holding fee[s]" in the amount of "$5.00 per week per color transparency"; (3) "service charge[s]" at a rate of "one and one-half percent per month" on unpaid balances of invoices beginning thirty days after invoice; and (4) reimbursement for loss or damage of each "original transparency" in the amount of $1500.

¶ 16 The trial court acknowledged during Axiom's motion for a directed verdict at the close of Stock Solution's case that Stock Solution had presented sufficient evidence of its own performance in accordance with the terms of the contracts by delivering to Axiom the agreed-upon 107 transparencies, that Axiom took possession of the transparencies, and that Axiom had failed or refused to return 37 of the 107 transparencies in breach of the contracts. Specifically, the trial court stated:

Well, at this point in the case, at the end of your case, before I rule on the motion, I must tell you that I have to take as established that they [Axiom] got the slides and you [Stock Solution] didn't get them back. So that—that I would consider established.

¶ 17 Nevertheless, despite the above-mentioned evidence establishing the existence of the contracts, Stock Solution's performance under the contracts, and Axiom's breach of the contracts, the trial court concluded that with regard to the issue of damages, Stock Solution's evidence established that the actual value of the missing transparencies was "between $5.00 and $10,000.00" and that based on this evidence, Stock Solution had failed to prove that the $1500 liquidated damages provision for lost transparencies was "a reasonable forecast of . . . actual damages." Accordingly, without considering the other contractual damages claimed, the trial court dismissed Stock Solution's entire complaint.

¶ 18 The unrebutted evidence at trial, however, established a prima facie case that, in addition to $1500 in liquidated damages for each of the missing original transparencies, Stock Solution was also entitled to, unless rebutted,[5] $1 plus sales tax of $0.06 for the one missing duplicate transparency and holding fees and service fees and charges in accordance with the terms of the contracts.[6] Moreover, it is well settled that "[n]ominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not been proven."[7]

---

4. Specifically, in addition to direct testimony establishing the existence of the contracts, Stock Solution offered into evidence, and the trial court received, the actual contracts between the parties and Axiom's answers to Stock Solution's requests for admissions in which Axiom "admit[ted] that the Delivery Memoranda contained in the action were signed by . . . employees of Axiom Design, L.L.C." and that "the transparencies as stated in this action were delivered to Axiom."

5. See discussion regarding burden of proof *infra* part III.

6. Specifically, this evidence consisted, inter alia, of the following exhibits: (1) the contracts between the parties providing for holding fees, service fees, and service charges; (2) invoices for the lost transparencies; (3) letters from Stock Solution to Axiom demanding return of the missing transparencies; (4) invoices for holding fees and charges; and (5) notices of holding fees.

7. Axiom argues that Stock Solution failed to raise the issue of nominal damages before the trial court. However, Stock Solution clearly

*Turtle Mgmt., Inc. v. Haggis Mgmt., Inc.,* 645 P.2d 667, 670 (Utah 1982) (citing *Gould v. Mountain States Tel. & Tel. Co.,* 6 Utah 2d 187, 193, 309 P.2d 802, 805 (1957); *Thompson v. Anderson,* 107 Utah 331, 336, 153 P.2d 665, 667 (1944); 22 Am.Jur.2d, *Damages* § 9 (1965)). Therefore, even assuming the unenforceability of the contracts' $1500 liquidated damages clauses, Stock Solution had still established a prima facie right to relief under the facts and the law at the close of its case-in-chief.

¶ 19 Axiom argues, however, that even if Stock Solution did establish a prima facie right to relief, the trial court's order of dismissal should nevertheless be upheld because under rule 41(b) a trial court may dismiss an action even if the plaintiff has established a prima facie case, if the trial court is "not persuaded by the evidence presented by the claimant." Axiom argues that the trial court was unpersuaded Stock Solution suffered "any damages" and therefore Stock Solution's case was properly dismissed.

¶ 20 Rule 41(b) states:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. *If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).*

(Emphasis added.) In this case, Stock Solution clearly presented evidence, which was received at trial, that contracts were made between the parties, that it performed in accordance with the terms of the contracts, that Axiom breached the contracts, and that it was therefore entitled to one or more of the following damages: $1500 for each missing original transparency, $1 plus sales tax of $0.06 for the one missing duplicate transpar-

ency, holding fees for all the missing transparencies, service fees and charges in accordance with the terms of the contracts, and nominal damages. In dismissing Stock Solution's case, however, the trial court focused solely on the unenforceability of the contracts' $1500 liquidated damages clauses, making no findings regarding Stock Solution's entitlement to the additional contractual damages sought by Stock Solution, despite the fact that the documents establishing Stock Solution's entitlement to these damages were received into evidence and never challenged by Axiom. Had the trial court found the evidence relating to these damages to be unpersuasive, it was required by rule 41(b) to "make findings as provided in Rule 52(a)." Utah R. Civ. P. 41(b). It did not do so, and therefore, we must assume that the trial court's ruling concerned only the contracts' $1500 liquidated damages clauses, ignoring the additional contractual damages sought by Stock Solution.

¶ 21 Accordingly, we hold that the trial court erred in dismissing Stock Solution's entire case without giving any consideration to the uncontradicted evidence that Stock Solution had established a prima facie case that it was entitled to holding fees, service fees and charges, nominal damages, and $1 plus sales tax of $0.06 for the 1 lost duplicate transparency. Therefore, we reverse the decision of the trial court and remand for a new trial. Moreover, because we have reversed the trial court's order, we also vacate the trial court's award of attorney fees to Axiom.

¶ 22 Although resolution of the above issue is dispositive of the present case, where an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of "pass[ing] on matters which may then become material." *LeGrand Johnson Corp. v. Peterson,* 18 Utah 2d 260, 263, 420 P.2d 615, 617 (1966); *see also* Utah R.App. P. 30(a); *Kawamoto v. Fratto,* 2000 UT 6, ¶ 10, 994 P.2d 187; *Salt Lake County v. Salt Lake City,* 570 P.2d 119, 121 (Utah 1977). Accordingly, because Stock Solution's arguments concerning the correct burden of proof and

raised the issue in its memorandum in opposition to Axiom's motion for attorney fees and costs and

in its motion to amend findings, vacate order of dismissal, and for a new trial.

its requests for admissions are likely to be raised again at the new trial, we discuss them.

### III. BURDEN OF PROOF ·

¶ 23 In addition to the assignment of error discussed above, Stock Solution also argues on appeal that the trial court erred by misplacing the burden of proof regarding the enforceability of the contracts' $1500 liquidated damages clauses.

¶ 24 In *Reliance Insurance Co. v. Utah Department of Transportation,* 858 P.2d 1363 (Utah 1993), this court enunciated the test for determining the validity of a liquidated damages clause:

> "(1) [A]n agreement, made in advance of breach fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless
>
> > (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
> >
> > (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

*Id.* at 1367 (quoting Restatement of Contracts § 339 (1932)).

¶ 25 Moreover, in liquidated damages cases, the law of this state is well settled regarding where the burden of proof lies. In *Young Electric Sign Co. v. United Standard West, Inc.,* 755 P.2d 162 (Utah 1988), this court stated:

> The burden is on the party who would *avoid* a liquidated damages provision to prove that no damages were suffered or that there is no reasonable relationship between compensatory and liquidated damages.

*Id.* at 164 (emphasis added); *see also, e.g., First Nat'l Bank of Chicago v. Atlantic Tele–Network Co.,* 946 F.2d 516, 522 (7th Cir. 1991); *Rodriguez v. Learjet, Inc.,* 24 Kan. App.2d 461, 946 P.2d 1010, 1014 (1997); *Shallow Brook Assocs. v. Dube,* 135 N.H. 40, 599 A.2d 132, 138 (1991); *Metlife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.,* 159 N.J. 484, 732 A.2d 493, 499 (1999); *P.J.*

*Carlin Constr. Co. v. City of New York,* 59 A.D.2d 847, 399 N.Y.S.2d 13, 14 (1977); *R. Conrad Moore & Assocs., Inc. v. Lerma,* 946 S.W.2d 90, 95 (Tex.Ct.App.1997). We regard this application of the burden of proof as appropriate because Axiom initially assented to the clause when it signed the contracts. Furthermore, the purpose of a liquidated damages provision is to obviate the need for the nonbreaching party to prove actual damages. *See Young Elec. Sign Co.,* 755 P.2d at 164 ("If a liquidated damages provision is enforceable, a plaintiff need not prove actual damages."). This purpose could not be served if the nonbreaching party, instead of proving actual damages, had to show that the damage resulting from a breach of contract is "'incapable or very difficult of accurate estimation'" and that the stipulated amount is not grossly in excess of actual damages. *Reliance,* 858 P.2d at 1367 (quoting Restatement of Contracts § 339 (1932)).

¶ 26 In the present case, Axiom is the party attempting to *avoid* the liquidated damages provision. Therefore, under Utah law, Axiom, not Stock Solution, has the burden of proving that the liquidated damages clause was not a reasonable forecast of actual damages. *See Young Elec. Sign Co.,* 755 P.2d at 164. However, the trial court stated the following in its findings of fact and conclusions of law with respect to this issue:

> The court finds, based on the evidence submitted in Court, that [Stock Solution] has failed to meet *his burden of proof* in that *he* has failed to produce evidence that the $1,500.00 liquidated damage provision is a reasonable forecast of the actual damages sustained by [Stock Solution].

(Emphasis added.) Accordingly, the trial court's view of the applicable law was precisely opposite the established rule in this state, and therefore, we agree with Stock Solution that the trial court erred by misplacing the burden of proof on the issue of liquidated damages. On retrial, the trial court shall apply the correct rule as to burden of proof.

### IV. REQUESTS FOR ADMISSION

¶ 27 Finally, Stock Solution argues that the trial court erred by failing to hold that the

matters presented in its requests for admissions were deemed admitted and conclusively established for purposes of this action.

¶ 28 Rule 36 of the Utah Rules of Civil Procedure provides that each of the matters of which an admission is requested is deemed admitted

> unless, within thirty days after service of the request, ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter.... *The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission* ....

Utah R. Civ. P. 36(a)(2) (emphasis added). To deny "specifically," as the word is used in the rule, means that denials must be forthright, specific, and unqualified. Accordingly, it is well established that a mere refusal to admit is not sufficient to constitute a denial under rule 36. *See Southern Ry. Co. v. Crosby*, 201 F.2d 878, 880 (4th Cir.1953) (stating that "certainly a refusal to admit does not amount to a denial" under rule 36 of the Federal Rules of Civil Procedure); *Bowles v. Batson*, 61 F.Supp. 839, 843 (W.D.S.C.1945) (holding that responses to requests such as "Defendant will not admit" and "Defendant refuses to admit" do not constitute denials under rule 36 of the Federal Rules of Civil Procedure); *see also Massaro v. Dunham*, 184 Mont. 400, 603 P.2d 249, 252 (1979) ("An evasive answer is to be treated as a failure to answer, an admission."); 23 Am.Jur.2d *Depositions and Discovery* § 326, at 619 (1983) (stating that "equivocal and evasive responses are not proper").

¶ 29 In this case, Stock Solution served Axiom with requests for admissions that covered numerous aspects of its case including the existence of the contracts, their execution by authorized personnel, the delivery of transparencies by Stock Solution to Axiom, Axiom's failure to return the transparencies, and the reasonableness of the contracts' $1500 liquidated damages clauses. Axiom, however, did not admit or deny the requests, but rather stated: "See Brent Watts' Response to Plaintiff's First Request for Admissions." Although Stock Solution had not served requests on Brent Watts, he nevertheless responded to the requests in his capacity as an officer of Axiom, on Axiom's behalf. In his response, Brent Watts responded to many of the pivotal requests in part by stating, "Defendant does not admit." Stock Solution argues that the words "Defendant does not admit" do not constitute a denial under rule 36 and therefore its requests should be deemed admitted and "conclusively established" for all purposes of this action.

¶ 30 However, we have long maintained that to preserve an issue on appeal a party must first raise the issue before the trial court. *See, e.g., State v. Carter*, 707 P.2d 656, 660–61 (Utah 1985). In this case, Stock Solution's argument concerning its requests for admissions was never raised before the trial court, and consequently, the trial court never had the opportunity to rule on this issue. Therefore, we leave to the trial court on remand the determination of whether Axiom's responses are sufficient, under the standards enunciated above, to constitute a denial under rule 36(a) and, if not, whether Stock Solution's requests should be deemed admitted and conclusively established for purposes of this action, or alternatively, whether Axiom should be allowed to withdraw or amend its answers in accordance with rule 36(b).

## CONCLUSION

¶ 31 We conclude the trial court erred in dismissing Stock Solution's case under rule 41(b) at the close of its case-in-chief and prior to Axiom's presentation of evidence. Therefore, we reverse the judgment of the trial court and remand this case for a new trial consistent with this opinion. Moreover, because we have reversed the trial court's order, we also vacate the trial court's award of attorney fees to Axiom.

¶ 32 HOWE, C. J., DURHAM, DURRANT, and WILKINS, JJ, concur in Associate Chief Justice RUSSON's opinion.