[Cite as *Am. Express Bank, FSB v. Knapp*, 2016-Ohio-762.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| AMERICAN EXPRESS BANK, FSB, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-L-069** |
| ROY KNAPP aka ROY F. KNAPP, JR., et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 13 CV 001697.

Judgment: Affirmed.

*Scott E. Collister* and *Robert L. Hengge*, Zwicker & Associates, PC, 2300 Litton Lane, Suite 200, Hebron, KY, 41048 (For Plaintiff-Appellee).

*Jeremiah E. Heck* and *Robert G. Parker*, Luftman, Heck & Associates, LLP, 580 East Rich Street, Columbus, OH 43215 (For Defendants-Appellants).

TIMOTHY P. CANNON, J.

{¶1}    Appellants, Roy Knapp (aka Roy F. Knapp, Jr.) and Consul-Tech, Inc., appeal from a judgment of the Lake County Court of Common Pleas entered in favor of appellee, American Express Bank, FSB.  Mr. Knapp created Consul-Tech, Inc., an international trade consulting group, in the 1970s.  He is the sole employee of the company.  At issue is an outstanding balance on a credit card issued by appellee to appellants in 1999.  For the following reasons, we affirm the judgment of the trial court.

**{¶2}** In August 2013, appellee filed a complaint against appellants alleging breach of contract and unjust enrichment for money owed on a credit card account. A bench trial was held in March 2015. Mr. Knapp testified that in 1999 he applied for the credit card on behalf of Consul-Tech as the corporation's president. He denied that he signed any type of personal guaranty and stated he applied for the card solely on behalf of the corporation.

**{¶3}** Paul Carey testified in behalf of appellee as the Assistant Custodian of Records and Supervisor of appellee's legal department. He testified the determination of whether to issue a credit card to a small business is based solely on the credit-worthiness of the principal, and the card is actually issued to the principal. He further testified that appellee no longer has a copy of the 1999 agreement, as it is impossible to keep records back that far. Rather, appellee sends new credit card agreements to cardholders every three years when a new card is issued. Mr. Carey testified these agreements include the cardholder's name and a summary of the changes to the previous agreement, and copies are sent to the cardholder in his or her monthly statement. If the cardholder objects to those changes, he or she can cancel the account; use of the new card binds the cardholder to the new agreement.

**{¶4}** Appellee introduced two exhibits. Exhibit 1 is a copy of the credit card agreement of 2011. Exhibit 2 consists of copies of statements issued to appellants from November 2007 through July 2013, which include notices of changes made to the credit card agreement. Mr. Carey testified appellee's records do not include copies of any earlier statements issued to appellants because they are purged after seven years. He further testified that appellee's records indicate that, between November 2007 and July

2

2013, appellants' account was active and statements were being mailed to the address on file. He further testified there was no record or indication that statements were ever mailed to an incorrect address or that Mr. Knapp ever reported an incorrect address. Mr. Knapp testified he could not remember whether he received the 2011 agreement and that there were a few times, at some point since 1999, that he did not receive a monthly statement in the mail.

{¶5} On May 18, 2015, the trial court entered judgment on the breach of contract claim in favor of appellee and against appellants, jointly and severally. Appellants were ordered to pay appellee the balance of the account in the amount of $27,665.89 plus interest from the date of the entry, at the rate of 27.24% per annum, and costs.

{¶6} Appellants filed a timely appeal and assert four assignments of error for our review:

> [1.] The Trial Court committed prejudicial error in granting a judgment against Roy Knapp and Consul-Tech for $27,655.89 when there is no evidence to support such an award and Plaintiff did not plead a cause of action based on an account or an account stated.
>
> [2.] The Trial Court committed prejudicial error by finding Utah law applied when the only contract introduced into evidence containing a choice-of-law provision had a revision date of June 2011, and there was no original contract introduced that gave AMEX the power to unilaterally amend the contract at issue.
>
> [3.] The Trial Court committed prejudicial error in granting a judgment against Roy Knapp and Consul-Tech for $27,655.89 when there is no evidence to support such an award and Plaintiff did not plead a cause of action based on an account or an account stated even if Utah law applies.
>
> [4.] The Trial Court committed prejudicial error in finding Roy Knapp personally liable because the cardmember agreement indicated he

3

was jointly and severally liable with Consul-Tech and/or that Mr. Knapp used the card at issue to further his own interest.

**{¶7}** On appeal, our review of the trial court's determination involves issues of both law and fact. Provided the trial court's factual findings are supported by competent, credible evidence, we are required to uphold them. We must then engage in a de novo review of the trial court's application of the law to those facts. *McSweeney v. Jackson*, 117 Ohio App.3d 623, 632 (4th Dist.1996).

**{¶8}** Appellants' arguments all stem from the assertion that appellee cannot succeed on its breach of contract claim because it cannot produce the original 1999 credit card agreement. The threshold issue before us, therefore, is whether the 2011 agreement controls this dispute.

**{¶9}** R.C. 1109.20(D) states: "Subject to any requirements under applicable federal law, a bank and a borrower may specify in their agreement any terms and conditions for modifying or amending the agreement." Appellants argue the 2011 agreement is only binding if the 1999 agreement reserved the power to unilaterally change the agreement. Because the terms of the 1999 agreement are not available, however, appellants assert the terms of the 2011 agreement do not control the choice of governing law; whether Mr. Knapp can be held personally liable; or whether appellee was entitled to charge an interest rate above the statutory default rate. Appellee argues the 2011 agreement controls because it superseded any previous agreements, including the 1999 agreement, and because appellants used the card after the 2011 agreement was in effect.

**{¶10}** "Credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement." *Bank One, Columbus, N.A. v. Palmer*,

4

63 Ohio App.3d 491, 493 (1989).  "A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration."  *McGlothin v. Huffman*, 94 Ohio App.3d 240, 244 (12th Dist.1994) (citations omitted).

> The basis of novation is that a new contract is made, in which there is a complete meeting of the minds.  Because a new contract is made, the parties must assent to the new or changed terms.  However, while consent may be implied from the circumstances and the conduct of the parties, 'the evidence of such knowledge and consent must be clear and definite, since a novation is never presumed.'

*Discover Bank v. Lammers*, 2d Dist. Greene No. 08-CA-85, 2009-Ohio-3516, ¶42, quoting *Bolling v. Clevepak Corp.*, 20 Ohio App.3d 113, 125 (6th Dist.1984) (internal citations omitted); *see also Moneywatch Cos. v. Wilbers*, 106 Ohio App.3d 122, 125 (12th Dist.1995).  Thus, credit card companies cannot unilaterally change the terms of an agreement without the cardholder's assent and valid consideration for the change. *Palmer*, *supra*, at 494.  "Credit card companies sometimes accomplish this by sending the cardholder notice of a change in the terms of the agreement, with an indication that continued use of the card will be deemed to constitute assent to the change." *Lammers*, *supra*, at ¶33.

{¶11}  Here, the 2011 agreement provided that use of the new card constitutes acceptance of the new credit card agreement: "When you or an Additional Cardmember, as defined below, use the Account (or sign or keep a card), you and the Additional Cardmember agree to the terms of the Agreement.  * * *  *You* and *your* mean the Basic Cardmember and the Company."

5

{¶12}  The trial court found that the 2011 agreement was sent to appellants and that they accepted the terms contained in the 2011 agreement by continuing to use the card.  There is competent, credible evidence in the record to support these findings.  Therefore, as a matter of law, the trial court did not err in holding that the 2011 agreement governs this dispute.

{¶13}  Under their second and fourth assignments of error, appellants argue that Mr. Knapp should not be held personally liable and that Utah law should not control this dispute.  The two relevant provisions in the 2011 agreement are as follows:

> * * *  *Basic Cardmember* means the person who applied for this Account or to whom we address billing statements.  *Company* means the business for which the Account is established.  *You* and *your* mean the Basic Cardmember and the Company.  You agree, jointly and severally, to be bound by the terms of this Agreement.
>
> * * *
>
> Utah law and federal law govern this Agreement and the Account. They govern without regard to internal principles of conflicts of law. We are located in Utah.  We hold the Account in Utah.  We entered into this Agreement with you in Utah.

{¶14}  Because we hold that the 2011 agreement is binding, the trial court did not err in concluding that Utah law governs and that Mr. Knapp is jointly and severally liable on the account.

{¶15}  Appellants' second and fourth assignments of error are without merit.

{¶16}  Under their first assignment of error, appellants essentially contend that appellee did not present sufficient evidence on its breach of contract claim under Ohio law.  This argument is not well taken, as we have already determined that Utah law governs this dispute.

{¶17}  Appellants' first assignment of error is without merit.

**{¶18}** Under their third assignment of error, appellants again contend that appellee did not present sufficient evidence on its breach of contract claim, this time under Utah law.

**{¶19}** "When a party challenges a verdict based on insufficiency of the evidence, '[w]e reverse only if, viewing the evidence in the light most favorable to the prevailing party, we conclude that the evidence is insufficient to support the verdict.'" *Francis v. Natl. DME*, 350 P.3d 615, 621 (Utah App.2015), quoting *Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 52 (Utah 1994) (citation omitted).

**{¶20}** The elements of a breach of contract claim are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 392 (Utah 2001).

**{¶21}** Appellants first argue there is no contract upon which to base a breach of contract claim. Utah law provides that a credit card agreement is binding if the cardholder is provided a written copy of the agreement, the agreement provides that use of the card constitutes acceptance, and the cardholder uses the card after receiving the agreement. *MBNA Am. Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Utah App.2006). We have already determined there was competent, credible evidence to support the trial court's finding that the 2011 agreement was sent to appellants and that they accepted the terms contained in the 2011 agreement by continuing to use the card. Therefore, under Utah law, a contract existed upon which appellee could bring a claim for breach.

**{¶22}** Next, appellants contend appellee "has failed to prove damages with any degree of accuracy, or that it even suffered a loss at all." The crux of appellants'

7

argument is that appellee did not "submit any contractual evidence pertaining to the interest rate that was charged between the years 1999 and June of 2011." They allege appellee "was charging an interest rate in excess of the statutory rates for at least six of the years for which we have billing statements to analyze, and likely for the six years between 1999 and 2005 as well." As a result, appellants conclude that "[t]he large disparity between the interest rate [appellee] charged over those years compounded monthly versus the statutory rate compounded annually would likely exceed the alleged balance in the Complaint."

**{¶23}** Initially, we note the statutory interest rate is a default rate to be charged in the absence of a contract that specifies a rate of interest. The evidence is clear, however, that although the terms are in dispute there was a contract between the parties for the entire duration of the account that charged a specific rate of interest. At trial, appellee presented monthly billing statements from November 2007 through July 2013 to prove that the amount currently owed on appellants' account was $27,665.89. Each of these statements includes the interest rate currently being charged on the account. The statement for November 2007 indicates the outstanding balance was $27,949.19. By June 2008, appellants had paid down the balance to $25.36. Any alleged improper interest rates charged prior to June 2008 had been charged and paid.

**{¶24}** Pursuant to the Billing Dispute Procedure outlined in the 2011 agreement, appellants were required to notify appellee of any suspected statement errors in writing within 60 days after the error appeared. Mr. Carey, the Assistant Custodian of Records, testified that in the 16 years since the card was opened, appellants never contacted appellee with a dispute as to the interest rate being charged nor did they make any

claims of fraud on the account. Mr. Knapp also testified that he never attempted to close the account due to the interest rate being charged.

{¶25} Finally, the 2011 agreement provides for a default interest rate of 27.24% per annum and states: "We may change the terms of, or add new terms to, this Agreement. We may apply any changed or new terms to any existing and future balances on the Account, subject to applicable law."

{¶26} We therefore hold there was sufficient evidence to support the trial court's judgment in favor of appellee and against appellants, jointly and severally, in the amount of $27,665.89 plus interest from the date of the entry, at the rate of 27.24% per annum, and costs.

{¶27} Appellants' third assignment of error is without merit.

{¶28} For the reasons stated above, the judgment of the Lake County Court of Common Pleas is hereby affirmed.


CYNTHIA WESTCOTT RICE, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.